## No. 13,220.

HARVEY, PRESIDENT *v.* CITY AND COUNTY OF DENVER ET AL.

(18 P. [2d] 321)

Decided December 30, 1932.

Mr. Floyd F. Miles, for plaintiff in error.

Messrs. Lewis & Grant, Messrs. Van Cise & Robinson, Mr. James D. Parriott, Mr. Frederick P. Cranston, Mr. Karl C. Brauns, for defendants in error.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as plaintiff and defendants in error as defendants, or by name.

Denver, through Fogg as commissioner of supplies, bought of the Kistler Company and the American Company furniture for a new court house, and those companies and Fogg (and others whose signatures are immaterial to our discussion) signed a contract itemizing and describing the furniture, and fixing prices and time of delivery and payment. Plaintiff, as a taxpayer and for himself and others similarly situated, sought to enjoin further action thereunder as illegal, and particularly as contrary to certain sections of the city charter. Defendants had judgment, to review which plaintiff prosecutes this writ and asks that it be made a supersedeas. Defendants moved to advance the cause as one involving a matter publici juris, and the parties join in a request for final disposition on this application.

Plaintiff is not entitled to supersedeas since the judgment was for costs only. No question of publici juris is involved hence there is no right to advancement.

However, the examination which enabled us to reach the foregoing conclusions enables us also to dispose of the litigation in a short opinion, for which reason, and the further one that important business may not be unduly obstructed by pending litigation, we now proceed to final disposition of the cause. We do this with less reluctance since it is apparent from the record that plaintiff's rights, if he has any, which he herein seeks to vindicate, are purely technical, and that as a taxpayer he stands to gain, not lose, by the transaction complained of.

The entire argument goes to the question of whether the contract involved was let to bids and the writing signed as required by law and charter provisions. It probably was, but we first assume the contrary. If the purchases were of furniture and not fixtures, or, as alleged in the complaint, "additions to, or a part of said court house, * * * and is intended to and will become a part of said building" Fogg was authorized to buy in the open market. The trial court, correctly we think, held that these items were furniture. The schedule consists almost entirely of such articles as chairs, benches, desks, tables, hatracks, wastebaskets, and cuspidors. It includes also such as public rails, foot rests and jury-box platforms, temporarily fastened to the floors, but, as usual in such cases, removable with slight inconvenience, and intended to be so. All this is court house furniture.

Section 169 of the city charter authorizes the commissioner of supplies to make such purchases in the open market "subject to such regulations and restrictions as shall be prescribed by the mayor." Plaintiff's counsel says in his brief: "It may be conceded that under the above charter provision [said section 169] the commissioner of supplies may under certain conditions purchase in the open market. He is, however, hedged about by such 'regulations and restrictions as may be prescribed by the mayor' when deemed advisable." .
Whether the mayor prescribed any such we are not ad-

vised. If he did it is not contended that Fogg failed to follow them.

Did Fogg buy in the "open market"? Plans and specifications were submitted to the defendant corporations and bids thereon requested. We quote further from the brief of counsel for plaintiff and accept his statement: "Bids were not only invited upon the specifications and designs prepared by the architect of the city, but the bidders were invited to submit bids based upon their own designs and specifications, and the contract was actually let upon designs submitted by the successful bidders themselves." Again, "Here each of the bidders was invited to submit bids based upon his own designs and specifications, and the contract was actually awarded upon the designs and specifications of the corporate defendants."

Neither reported cases nor textbooks, so far as our research goes, throw any light upon the proper interpretation of the term "open market," but its meaning, as used in said charter section, seems to us reasonably clear. It conveys the idea of buying, at the dealer's price, what he offers, as distinguished from the idea of presenting to him a schedule of what you desire, in which he may or may not directly deal, and which he may be obliged to import, or manufacture to special design, and asking him at what price he can meet your requirements. So assuming, and accepting the foregoing statements of plaintiff's counsel, it is as though Fogg had gone to the place of business of one of the defendant corporations with a list of his requirements and explicit plans and specifications for the several items thereof, and asked for bids thereon. Having received such he then inquired of said defendant the articles with which, and the price at which, in its judgment it could reasonably supply his wants from its stocks and factories. These latter being quoted, and the articles and prices being satisfactory, Fogg dropped his scheme to let to bids on his own designs and specifications and closed the deal on the seller's.

118

This, we think, was buying in the "open market" and within Fogg's conceded authority.

 It seems appropriate to note further that section 171 of the city charter provides how the commissioner of supplies shall make certain purchases (including such as are here in question) by advertisement and letting to bids, and concludes: "If impracticable to advertise, sealed proposals shall be invited from at least three responsible persons dealing in the articles required, and the bids shall be opened and contract awarded as hereinbefore provided."

If Fogg did not buy in the open market he bought under this provision of said section and in conformity thereto and his contract was valid. But section 7 of the said charter provides that contracts requiring the assent of the city shall be signed by the mayor and it is insisted that as this contract is not so signed it is invalid. However, the city council passed an ordinance, signed by the mayor, creating a special fund of the moneys used in the purchase of this furniture, and directing that they be so applied and expended by the commissioner of supplies. If then the contract were one which, under said section 7, required the signature of the mayor (which for reasons unnecessary here to state we doubt), the affixing of that signature was a mere formal requirement which, so far as plaintiff is concerned, could be complied with at any time, and we will consider that done which ought to have been done.

There are other reasons why plaintiff's position is not tenable, but we think it unnecessary to discuss them.

The judgment is affirmed.

Mr. Justice Moore not participating.