October Term, 1933

STATE EX REL. GREENWOOD, ATTY. GEN., v.
PEARSON, ET AL., BOARD OF
COUNTY COMMISSIONERS.

(No. 1807; November 14, 1933; 26 Pac. (2d) 641)

The cause was submitted for the appellants upon the brief of *Rodney M. Guthrie,* of Sundance, Wyoming.

The cause was submitted for respondent upon the brief of *Ray E. Lee,* Attorney General, *Oscar O. Natwick,* Deputy Attorney General, and *William C. Snow,* Assistant Attorney General, all of Cheyenne, Wyoming.

BLUME, Justice.

On July 14, 1932, the state board of equalization, after examining the abstracts of the assessment rolls of the various counties in the state, found that the grazing and dry farm lands in Crook County had been undervalued, and directed the board of county commissioners of that county, by an order duly issued, to cause to be increased by nine per cent the valuation of the grazing lands and by fifteen per cent the valuation of the dry farm lands, in that county. The board of county commissioners refused to comply with the order. On August 17th, 1932, accordingly, an action was brought by the state, as plaintiff, on relation of the attorney general against the members of the board of county commissioners above mentioned, as defendants, to compel compliance therewith. On August 31, 1932, an answer was filed in the cause, containing a general denial, and setting forth in a second defense substantially the following, namely: Defendants deny that the state board of equalization examined and compared the returns of assessments of the property in the several counties in 1932 and equalized the same, and that as a result of such examination it was found that grazing and dry farm lands in Crook County were undervalued; that under section 1, article 15, of the Constitution, all the property of the state must be uniformly assessed for taxation, and all the land must be assessed at its actual value; that to that end the assessor of Crook County,

in 1932, fixed the value of grazing lands in that county at an average of $2.16 and the average value of f a r m l a n d s at $5.47 per acre; that in the a d j o i n i n g county of Weston grazing land was assessed at $2.04 and in the adjoining county of Campbell at $2.05; that it was well known to the state board of equalization that the lands in these three counties are of the same general character and value; that despite this knowledge, the value of the lands in Weston and Campbell counties were not raised, but the board raised the valuation of the lands in Crook County alone; that such order was made for the purpose of working an intentional discrimination against the tax payers of Crook county, and for the express purpose of forcing them to pay more than their just and full portion of the cost of the government of the state; that such order of the state board was made in an arbitrary, capricious and despotic manner; that the board, accordingly, was without jurisdiction to make the order relating to the land in Crook county; that by reason of the intentional discrimination, the order constitutes an injustice and fraud on the tax payers of Crook county.

A general denial was filed to the second defense and the case came on for trial on August 31, 1932. No evidence was introduced tending to show that the state board of equalization acted arbitrarily or with any intention to discriminate. The defendants merely showed by a number of witnesses that in their judgment the lands in Crook county were not worth over $1.25 per acre, and that, further, the lands in Weston and Campbell counties, instead of being less valuable, were somewhat more valuable than those in Crook county. C. H. McWhinnie testified on behalf of the state. He related the extensive efforts that had been made by the state board

of equalization to equalize the values of lands over the state; that he had made a special study in that connection during several months in 1927, in addition to the studies made since that time, and that in his judgment the lands in Crook county are more valuable than those in the two adjoining counties. He told that the results of his studies in 1927 were laid before a meeting of the county commissioners in 1928; that lengthy discussions were had; that at that time $5.00 was taken as a unit price; that at the meeting all agreed that the relative value fixed for the various counties were correct; that again in 1929 and in 1930, at similar meetings, these relative values were agreed on, although some objections were raised to the unit value which had been taken up to that time; that in fact, no objection to the relative values had been raised prior to this time at all. He further testified that a study of values had been made by a Dr. Vass, on behest of the Live Stock Association in the state, recommending, in substance, a reduction in valuation; that this reduction was made in 1931, and in fact was fixed somewhat lower than that recommended by Dr. Vass. It was made on account of the depression, and pursuant to a general demand; that the unit price was reduced from $5.00 to $3.50. He further related the action taken by the board in 1932 in equalizing assessments. At the conclusion of the trial the court found in favor of plaintiff and made the temporary writ of mandamus previously issued permanent. From this judgment the defendants have appealed.

Assuming for the purposes of this case that the allegations of the second defense were sufficient, if true, to authorize the courts to interfere, it is apparent from the brief review of the testimony that the defendants herein wholly failed in their proof. No testimony was offered to show that the state

board of equalization acted fraudulently or arbitrarily or that it intentionally discriminated against the tax payers of Crook County. The fact that in the opinion of a number of good citizens of Crook County, the value of the lands in that county is lower than that fixed by the board, or that, in their opinion, the land in Weston and Campbell counties, instead of being worthless, is, in fact, worth more than that in Crook County, does not show that the state board of equalization acted fraudulently, arbitrarily or with intentional disregard of the rights of the taxpayers of Crook County. It shows merely that these men differ in their opinion from that held by the members of the state board of equalization. In fact it was held in Pingree National Bank v. Weber County, 54 Utah 599, 183 Pac. 334, that "in the absence of evidence tending to show fraud the objection to evidence relating to value should have been sustained." Moreover, it affirmatively appears herein that the board acted honestly and in good faith. The judgment of its members may be wrong; but if it is, the remedy, in view of the provisions made by the legislature, does not lie in the courts, but lies in showing and persuading the board of the error of its judgment. We said in the case of Bunten v. Rock Springs Grazing Association, 29 Wyo. 461, 215 Pac. 244, as follows:

"To make assessments, to fix valuation for taxation, is primarily a function for administrative officers, and not one for the courts. In the very nature of things, it would be impracticable to leave these matters to the latter * * * and in the absence of legislative provision to the contrary, courts cannot substitute their judgment for that of the persons and boards specifically provided for that purpose by the legislative department of our government, and no relief can be given them in such case in the absence of fraud which invokes the principles of equity. Many things, deemed unjust by a large

or small proportion of the population, are done by, and happen under, other departments of our government, but are beyond the control of the courts. * * * Exact justice in matters of taxation is not possible. * * * Valuation being largely a matter of opinion, it is not at all certain that courts are better judges thereof than administrative officers, and when the legislative department has delegated the discretion of determining values to the latter, and has not made provision for review by the courts, as it has not in this state, then all that can be expected by the tax payer is the exercise of honest judgment in good faith, and if a wrong results, it is not, as has been held, in contemplation of law a legal wrong, such as can, in the absence of legislative authority, be remedied by the courts."

See also 61 C. J. 758, 829, 833, 853, 855.

Something is said in the brief of counsel for the defendants as to the "peculiar" method of fixing values adopted by the board, and that it is erroneous. It is not pointed out in what respects it is so. According to the testimony, the board took into consideration substantially all factors having relation to values. They began with a "unit" value. But the term and the use made of it is not explained. It is not pointed out wherein that was wrong. Some sort of basis must be taken by any one in the attempt to fix value. The brief also complains of the method used by Dr. Vass, who made a report on land values to the board, and which, among other factors, was taken into consideration by it, Just what the basis of Dr. Vass was is not at all clear from the testimony. It would seem that he, taking into consideration various factors, wanted assessments fixed low enough so that the man making use of land would have a reasonable income therefrom. He apparently arrived at substantially the same result as the state board. He was seemingly applied

to by the members of the Stock Association of this state, for the specific purpose of having the assessment of grazing lands reduced, and that was done. So far as has been pointed out, we have been unable to discover wherein the method taken by the board in fixing values was erroneous. The judgment of the trial court must, accordingly, be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.