**J. RAY McDERMOTT & CO., Inc., a Corporation, Appellant (Plaintiff below),**

v.

**Walter W. HUDSON, Richard J. Luman and William M. "Scotty" Jack, Constituting the Board of Equalization and Public Service Commission of the State of Wyoming, Appellees (Defendants below).**

No. 2888.

Supreme Court of Wyoming.

Jan. 7, 1960.

turn showing its gross 1956 production of 507,255 barrels after deducting State and Federal royalties. The company listed the price per barrel at amounts which, although varying each month, approximated $2.07. In the office of the Director of the Ad Valorem Tax Department, a notation was placed on the McDermott report by which sixty-six cents, the cost of trucking from the Ash Creek Field to a pipeline in Midwest, was added to the average figure listed by the producer; and accordingly the board on May 12, 1957, notified the McDermott Company of the tentative valuation of the production as being $2.7327 per barrel and stated that such valuation would be final unless there was advice to the contrary, objections to the valuation to be made in writing on or before June 6, 1957.

On June 6 Jack McDonough appeared on behalf of the company and requested that the trucking charge of sixty-six cents per barrel for delivering the oil to the place of sale be deducted from the tentative valuation. The board rejected the protest and sent a letter to the company so advising. On the third day of July the board executed a certificate showing the valuation of the McDermott Company to be $2.7327 per barrel.

Guy & Phelan and Ward A. White, Cheyenne, for appellant.

Thomas O. Miller, Atty. Gen., and Ralph M. Kirsch, Sp. Asst. Atty. Gen., for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

In January 1957 the State Board of Equalization[1] directed all owners, lessees, and operators of producing oil wells to return to the board for assessment purposes the amount of their 1956 production; and in response thereto J. Ray McDermott & Co., Inc., producers of oil in the Ash Creek Field, Sheridan County, filed a re-

The company appealed to the District Court of Sheridan County under the provisions of § 32–716, W.C.S.1945, now § 39–29, W.S.1957, alleging substantially that the company's production was in the Ash Creek Field where there was no posted price for crude; that no sale of the oil could be made except by transporting it to Midwest, Wyoming; that the board added the cost of such transportation, approximately sixty-six cents per barrel, to the price of the oil as returned by the company; and that the said action of the board was arbitrary, capricious, unfair, unjust, inequitable,[2] and in violation of the State and Federal constitutions.[3]

---

1. Pursuant to §§ 32–1001, 32–1002, and 32–1003, W.C.S.1945, now §§ 39–222, 39–223, and 39–224, W.S.1957.

2. The words used in the charges against the board did not directly mention fraud,

illegality, or abuse of discretion so as to unequivocally present a cause for such an appeal under the leading cases in this

3. See note 3 on Page 75.

Upon the appeal[4] the Director of the Ad Valorem Tax Department testified as to certain occurrences in the office prior to the board's action, and the chairman of the board was interrogated regarding the June 6, 1957, hearing. Appellant sought to introduce various exhibits and elicit testimony which, by the offer of proof, would have revealed that there was no posted price for crude oil at the Ash Creek Field or nearer thereto than Midwest and to disclose what the posted prices were at the latter point. Appellant also offered to show that there was no pipeline connection to the Ash Creek Field and no sale for the oil at that point and to prove that the posted price of the oil at Midwest less the trucking cost was the value used in payments to royalty holders, including the United States Government. Counsel for the board having previously admitted the genuineness of the proffered exhibits nevertheless objected both to them and to the tendered evidence on the ground that all were incompetent, immaterial, and irrelevant. They argued on the authority of Rayburne v. Queen, Wyo., 326 P.2d 1108, that if there was no illegal action or abuse of discretion the board's determination should not be disturbed and that plaintiff's petition having failed to allege these grounds no abuse of discretion or illegality could be shown. At the conclusion of plaintiff's case, the board moved to dismiss because of failure to sustain the burden of proof, and the court granted the motion.

The appeal raises two basic questions: (1) Under the provisions of § 32–716, what is the function of a district court in an appeal from a valuation decision of the Board of Equalization and (2) in fixing the valuation for assessment of the "gross product" of mines and wells, should the Board of Equalization deduct from the market value the cost of transportation.

 As to the first question, the board at the trial contended on the authority of the Rayburne case that appeals to a district court from decisions of state administrative boards are limited to a determination of whether or not the agency acted fraudulently or illegally. It was thus maintained in effect that any evidence which the board did not consider was irrelevant regardless of what it showed. According to this philosophy, the district court would be powerless to interfere in any way with a decision of an administrative board in this State unless such decision is fraudulent or illegal. To support its view, the board cites Bunten v. Rock Springs Grazing Ass'n, 29 Wyo. 461, 215 P. 244, 252 (approved in State ex rel. Greenwood v. Pearson, 46 Wyo. 307, 26 P.2d 641), as saying that an assessment to be held fraudulent must be "grossly inequitable and palpably excessive." It is true that Judge Blume in the Bunten decision indicated that a valuation to be considered fraudulent must be grossly inequitable and palpably excessive, and he said that the fixing of valuation for taxation was primarily a function for the designated administrative officers rather than the courts. He also said that the courts in the absence of legislative provision to the contrary cannot substitute their judgment for that of the persons and boards specifically provided for that purpose by the legislative department of our government. However, counsel seem to overlook his further significant words in the same decision: that such a board will not be permitted to act in an arbitrary,

jurisdiction. We presume that this may have been the viewpoint of the board in demurring on the ground that the petition did not state facts sufficient to constitute a cause of action. The order of the trial court overruling the demurrer does not indicate the reasoning, but under a liberal interpretation the words employed by the company as presenting the cause of action although not com-

mendable have on occasion been taken to connote fraud, illegality, or abuse of discretion.

3. Wyo.Const. art. 1, § 28; art. 15, § 11; art. 1, § 6; U.S.Const. Amend. XIV, § 1.

4. The venue was changed by stipulation to the District Court of Laramie County.

capricious, or fraudulent manner and that courts should restrain such administrative agencies from becoming despotic.

■ Unfortunately, the function of courts in the reviewing of the decisions of public administrative boards and agencies is, and for some time has been, in a chaotic condition,[5] and there is a lack of unanimity of viewpoint as to the function of the court in reviewing administrative determinations. See 73 C.J.S. Public Administrative Bodies and Procedure § 203; 42 Am.Jur. Public Administrative Law § 217. It is therefore perhaps not surprising that in the present situation there has been disagreement among counsel and some uncertainty by the court regarding its functions in appeals of this nature. In the Rayburne case we said that the finding of the Board of Land Commissioners if supported by substantial evidence should be approved by the district court on the trial de novo, and we indicated that substantial evidence might consist of competent testimony either taken before the board and properly preserved or adduced at the trial before the court, as in the trial of a civil action. See also Howard v. Lindmier, 67 Wyo. 78, 214 P.2d 737. We said that testimony in contested cases should be preserved verbatim and be available to the court at the trial de novo as one of the bases for the judgment. Although a protest from a ruling of a State board is not truly an adversary proceeding, it is nevertheless a contested matter for all practical purposes; and we see no reason why the Rayburne rule is not applicable in statutory appeals from actions taken by administrative agencies after the registration of a protest by interested persons. The agency can thus exercise the function given it by the legislature; but it will not be permitted to be arbitrary, capricious, or despotic in so doing. This will allow an interested person to show fraud, illegality, or abuse of discretion either by evidence aliunde or by a consideration of the record itself and will make the "trial de novo" on the appeal more than an empty formality.

■ Since the record of the board's hearing contains no substantial evidence to support the decision and since the district court improperly excluded all evidence regarding the propriety of the tax and the method of computing it on the theory that such matters had previously been considered by the board, the record here contains nothing upon which this court could properly determine the second point raised in the case.[6] It therefore becomes necessary that the cause be remanded to the district court for proceedings consistent with the views herein expressed.

Reversed and remanded.

---

5. This is apparent in a comprehensive reading of 4 Davis, Administrative Law Treatise, § 29.07, but is especially emphasized at p. 152; and see 24 A.B.A.J. 897, 904; 63 A.B.A.Rep. 623, 624.

6. " * * * in fixing the valuation for assessment of the 'gross product' of mines and wells, should the Board of Equalization deduct from the market value the cost of transportation."