[Civ. No. 2172. Fifth Dist. Sept. 8, 1975.]

GUILD WINERIES AND DISTILLERIES, Plaintiff and Appellant, v. COUNTY OF FRESNO, Defendant and Respondent.

COUNSEL

Strauss, Neibauer & Lacy, Strauss & Neibauer, Strauss, Neibauer, Krajewski & Anderson, Dan W. Lacy, Alan H. Strauss and Lance J. Krajewski for Plaintiff and Appellant.

Robert M. Wash, County Counsel, and Floyd R. B. Viau, Assistant County Counsel, for Defendant and Respondent.

OPINION

GARGANO, Acting P. J.—In August 1971, appellant petitioned the Board of Supervisors of Fresno County, sitting as a county board of equalization, for a reduction of the assessment made by the county assessor for the tax year 1971-1972 on appellant's winery and distillery plant in Fresno. Appellant did not challenge the value placed by the assessor upon the land or inventory but contended that the assessed value of the improvements was excessive; using the replacement cost approach to appraise the improvements, the assessor valued the plant at $3,023,340.

At the hearing before the board, appellant presented evidence to show that appellant is a large agricultural cooperative engaged in the crushing and selling of wine products and that on February 26, 1971, three days before the lien date, it purchased the Roma Wine Division of Schenley Industries for the total purchase price of $12,807,137; the purchase encompassed the winery plant in Fresno, a winery in Kingsburg, a winery in Delano, vineyards in Tulare and Kern Counties, brands and trademarks, and supplies and inventories. Then, using data prepared by its accountants, appellant attempted to prove that the value of the Fresno plant was $1,451,935.

Following is a brief résumé of the method used by the accountants in arriving at that value.

After appellant purchased the Roma Wine Division of Schenley Industries, it sold the vineyards in Tulare and Kern Counties to the Buttes Gas and Oil Company for $4 million; the accountants deducted $4 million from the initial $12,807,137 purchase price, leaving a balance of $8,807,137.

Next, the accountants fixed the value of brands and trademarks at $50,000, the value of the wine inventories at $5,405,953, and the value of supplies at $546,260. As part of the terms of the purchase appellant agreed to pay Schenley Industries' operating expenses, market assessment and federal taxes for January and February 1971; appellant's accountants determined that the operating expenses chargeable to these two months were $14,192 and allowed $39,997 for the market assessment and the taxes. These figures were deducted from the $8,807,137 balance, leaving a new balance of $2,750,735.

In a third step, the accountants used the assessed value placed upon the land on which each of the three wineries was located; they determined that the sum of $378,800 was the combined fair market value of the lands. They deducted this amount from the $2,750,735 balance, leaving $2,371,935 as the combined value of all improvements on the three plants; the accountants fixed the value of the Fresno winery, the largest of the three, at $1,451,935, the value of the Delano winery at $595,000, and the value of the Kingsburg plant at $325,000.

At the conclusion of the hearing, the board denied appellant's petition. Appellant then instituted this action in the court below for judicial review; after observing that the sale of the Roma Wine Division of Schenley Industries was not an open market sale, the court upheld the decision of the board of supervisors. This appeal followed.

Appellant concedes that in reviewing the decisions of a county board of supervisors in equalization matters, it is not the function of an appellate court, nor was it the function of the trial court, to weigh the evidence; while sitting as the county board of equalization, the board of supervisors is performing a constitutional function, and the test, on judicial review, is whether there is any substantial evidence to support the decision. (*Westlake Farms, Inc.* v. *County of Kings,* 39 Cal.App.3d 179, 183-185 [114 Cal.Rptr. 137]; see also *American Chemical Corp.* v. *County of Los Angeles,* 42 Cal.App.3d 45, 51-52 [116 Cal.Rptr. 751]; *Hunt-Wesson Foods, Inc.* v. *County of Alameda,* 41 Cal.App.3d 163, 169-176 [116 Cal.Rptr. 160].)

Appellant maintains that the evidence proves, as a matter of law, that the sale of the Roma Wine Division of Schenley Industries to appellant was an open market, arm's length transaction and that this single sale established an "actual market" for the Fresno Winery and Distillery Plant. Appellant reasons that when there is an "actual market" for a

particular type of property and an open market, arm's length sale of that property takes place near the lien date, the assessor, in valuing the property, is bound, conclusively, by the sale price. Appellant concludes that because the assessor was bound by the sale price of the Roma Wine Division of Schenley Industries, he could not resort to the replacement cost approach in fixing the assessed value of the Fresno plant. Appellant assertedly finds support for its thesis in the case of *De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546 [290 P.2d 544]. In that case the Supreme Court stated on page 563: ". . . the standard of valuation applicable to all . . . property, . . is the price it would bring if offered on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and this hypothetical market price is its value even though a sale of the property has not been made or contemplated. It is well settled that 'the absence of an "actual market" for a particular type of property does not mean that it has no value . . . but only that the assessor must then use such pertinent factors as replacement costs and income analyses for determining "valuation." ' "

Initially, we agree with appellant's position that the evidence presented at the hearing before the board of supervisors proved, as a matter of law, that the sale of the Roma Wine Division of Schenley Industries was an open market transaction. ■ An "open market" transaction is one where the sale price is negotiated between the buyer and seller as distinguished from a sale resulting from the submission of bids where the seller sells to the highest bidder or the buyer buys from the lowest bidder. (See *Harvey* v. *City and County of Denver,* 92 Colo. 114 [18 P.2d 321, 322]; *Albany Supply and Equipment Co.* v. *City of Cohoes,* 47 Misc.2d 312 [262 N.Y.S.2d 603, 605].) The fact that the sale in question was not advertised is immaterial.

Secondly, we agree with appellant's contention that the evidence proved, as a matter of law, that the sale of the Roma Wine Division of Schenley Industries was an arm's length transaction. There was no relationship whatsoever between the two corporate entities and the sale was consummated only after extensive negotiations between the officers of the companies; the uncontradicted evidence shows that appellant was contacted in 1970 by a business opportunities broker concerning the possible acquisition of the Roma Wine Division, and almost six months transpired before the sale was completed.

Lastly, there is merit to the suggestion that the assessor should not rely entirely upon such appraisal formulas as the replacement cost approach or the income analysis approach to arrive at the assessed value of the property to be taxed when sufficient market data is available to enable the public officer to make a reasonably accurate appraisal by the use of such market data. ■ In this state, with a few exceptions, all property must be assessed at its "full cash value," and the term "full cash value" is synonymous with the term "fair market value." Fair market value, in turn, means the estimated price the property would bring if offered on the open market under conditions in which neither the buyer nor seller could take advantage of the exigencies of the other. (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, §§ 110, 401; *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 561-563.) In short, market data on recent sales of the property to be assessed and comparable properties, when such data is available, is the most accurate way of arriving at the assessed value of the property. (Cal. Admin. Code, tit. 18, §§ 3(a), 4; see Ehrman & Flavin, Taxing Cal. Property, Valuation Principles, § 314, p. 284.)

■ However, while a recent, open market, arm's length sale of a particular type of property may be a very important factor in determining its fair market value, the sale, by itself, does not provide sufficient, reliable data to enable the assessor to make an accurate valuation of that property (*Janss Corp.* v. *Board of Equalization of Blaine Co.,* 93 Idaho 928 [478 P.2d 878, 881]); it is only a starting point in appraising the property.[1] As the Supreme Court of Idaho succinctly explained in *Janss:*

". . .'market value' becomes an important standard of measurement in the valuation of property only after there have been numerous sales or exchanges of similar property. Only then may the inference arise that the equivalent arrived at by the haggling of the market is probably the price at which the property would be offered and accepted. But when the property is of a kind seldom exchanged, it has no 'market value,' and then recourse must be had to other means of ascertaining value. [Citations.] As we stated recently in the case of *Gillingham* v. *Stadler,* 93 Idaho 874, 477 P.2d 497 (1970): 'In any single individual transaction there are many variables which are dependent upon the peculiar aspects

---

[1]See *Thaw* v. *Town of Fairfield,* 132 Conn. 173 [43 A.2d 65, 67, 160 A.L.R. 679]; *Des Moines Building-Loan & Savings Ass'n.* v. *Bomer,* 240 Iowa 1192 [36 N.W.2d 366, 369]; *Schleiff* v. *County of Freeborn,* 231 Minn. 389 [43 N.W.2d 265, 268-269]; *Collier* v. *Logan County,* 169 Neb. 1 [97 N.W.2d 879, 885], *People* v. *Lilly,* 265 App.Div. 68 [37 N.Y.S.2d 733, 737]; *Crouch* v. *County Court of Wyoming County,* 116 W.Va. 476 [181 S.E. 819]; cf. *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843, 852 [337 P.2d 465].

of the transfer and which affect the price agreed upon by the parties. Market value, therefore, is generally established by numerous sales of the same or comparable property and, although the price paid for property may be admissible to prove its market value, that fact alone is not conclusive.'

"Although a single arm's length transaction does not establish market value, and the price indicated thereby is not controlling as to the value of the property, such price may be considered as one factor in arriving at the full cash value of the property in question."

Appellant, therefore, would have us overextend the holding of the *De Luz* court. In that case, when the Supreme Court held that a property owner cannot escape taxation simply because there is no "actual market" for his property, it was equating an "actual market" with an "active market." (See *Kaiser Co. v. Reid,* 30 Cal.2d 610, 623 [184 P.2d 879].) It was in this context that the court stated that where there is no "actual market" for the property the assessor must then use other recognized appraisal methods to arrive at its taxable value. It is significant that the *De Luz* court was referring to ". . . industrial properties, where their special purposes in use or their mammouth size preclude the creation of an 'active market' for their disposition." (*Kaiser Co. v. Reid, supra,* 30 Cal.2d 610, 623.) It is also significant that in the *De Luz* opinion the court stated: "Assessors generally estimate value by analyzing market data on sales of similar property, replacement costs, and income from the property [citations], and since no one of these methods alone can be used to estimate the value of all property, the assessor, subject to requirements of fairness and uniformity, may exercise his discretion in using one or more of them." (*Supra,* 45 Cal.2d at pp. 563-564.)

█ In the case at bench appellant presented no reliable market data from which the value of the Fresno Winery and Distillery Plant could be calculated. It merely presented evidence of a single, open market, arm's length sale of a substantial business enterprise by one large corporation to another, of which the Fresno plant was only one of many components; appellant then attempted to fix the value of the plant by evaluating each of the components separately. It is common knowledge that the sale price of a large business enterprise consisting of many components does not reflect, necessarily, the true value of any one component were that component to be sold separately. It is also common knowledge that the value business men ascribe to the various components of a large business enterprise often is guided by tax consequences and other business

considerations. Furthermore, the sale price of the Roma Wine Division of Schenley Industries did not even establish an active market for the business sold, let alone for one of its components. As we have stated, a single sale does not provide conclusive market data for the property sold, and this is particularly true where, as in this case, the sale involves a complex transaction containing many variables which could affect the ultimate price agreed upon by the parties.

In summary, this is not a case in which the taxpayer presented reliable market data to contradict the assessor's opinion that the replacement cost of the improvements assessed represented their fair market value. Appellant merely presented evidence of a single sale of a large business enterprise, of the kind which is sold infrequently or seldom exchanged; to arrive at the value of one of the components of the enterprise sold, appellant's accountants used a process of elimination which included the sale price of the vineyards in Tulare and Kern Counties and estimates and opinions as to the other components. Neither the county assessor nor the board of supervisors was bound, conclusively, by the sale price of the business enterprise or the method used by appellant's accountants to arrive at the value of the Fresno winery.

The judgment is affirmed.

Franson, J., and Ginsburg, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 6, 1975.

*Assigned by the Chairman of the Judicial Council.