**UNION PACIFIC RAILROAD COMPANY, Appellant (Petitioner),**

v.

**The WYOMING STATE BOARD OF EQUALIZATION and Ann Strand, Sweetwater County Assessor, Appellees (Respondents).**

No. 90–103.

Supreme Court of Wyoming.

Dec. 10, 1990.

James D. Douglass, Broomfield, Colorado, for appellant; argument by Mr. Douglass.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard, Sr. Asst. Atty. Gen., for appellee State Bd. of Equalization; argument presented by Mr. Hubbard.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Union Pacific Railroad Company (Union Pacific) challenges the Sweetwater county assessor's (assessor) 1987 tax assessment of seventeen mobile homes. The Sweetwater County Board of Equalization found in favor of Union Pacific. The State Board of Equalization reversed, and the district court affirmed the state board. Union Pacific appeals the decision of the district court.

We affirm the decision of the district court.

Union Pacific raises a single issue on review:

"Whether the two intermediate reviewing tribunals, i.e., the State Board of Equalization and the district court, erroneously substituted their judgment for that of the trier of facts in the first instance, the Sweetwater County Board of Equalization."

Sometime before the 1987 tax assessment, Union Pacific purchased a number of mobile homes for track crew temporary living quarters. Seventeen of these mobile homes were situated in Sweetwater County. During April 1987, Union Pacific offered the homes for sale, advertised, and sent out invitations to bid to at least one hundred mobile home dealers. The homes were offered for sale individually. The sale was made to a single buyer who bought all seventeen mobile homes involved in this appeal.

The seventeen mobile homes were assessed by the Sweetwater county assessor

in late 1987 as omitted property pursuant to W.S. 39–2–403(c), which provides:

"Property omitted from prior year tax lists discovered by the county assessor shall be added to the assessment roll and taxes computed and collected for the period the property was omitted not exceeding five (5) prior years or since the last change in ownership, whichever is less."

The assessor was unaware that the mobile homes had been sold by Union Pacific at the time of the assessment. She followed the state regulations for valuing mobile homes and valued the homes at 25% of their 1967 replacement cost.

The sale price of the homes differed drastically from the assessor's estimated fair value, as illustrated by the chart below:

| Tax Acc't No. | Location | Estimated Assessor's Fair Value | Actual Sale Price |
|---|---|---|---|
| 17188 | Riner | $19,139 | $2,000 |
| 17189 | Riner | $19,139 | $2,000 |
| 17190 | Creston Jct. | $19,583 | $2,000 |
| 17191 | Creston Jct. | $19,583 | $2,000 |
| 17192 | Creston Jct. | $20,017 | $3,100 |
| 17193 | Wamsutter | $19,139 | $ 500 |
| 17194 | Wamsutter | $19,583 | $2,000 |
| 17195 | Bitter Creek | $17,383 | $ 500 |
| 17196 | Bitter Creek | $17,817 | $ 500 |
| 17197 | Pt. of Rocks | $19,139 | $ 500 |
| 17198 | Pt. of Rocks | $15,739 | $ 500 |
| 17199 | Pt. of Rocks | $17,817 | $ 500 |
| 17200 | Pt. of Rocks | $17,817 | $ 500 |
| 17201 | Bryan | $16,939 | $ 500 |
| 17202 | Bryan | $16,939 | $ 500 |
| 17203 | West Vaco | $19,139 | $ 500 |
| 17204 | West Vaco | $19,139 | $ 500 |

Union Pacific paid the tax due on the value assigned by the assessor but filed a protest with the Sweetwater County Board of Equalization. A hearing was held before the board, and both parties provided testimony and exhibits.

The county board, on October 5, 1988, issued "Findings of Fact, Conclusions of Law and Order" in which it held that the sale by Union Pacific was an arms-length, bona fide transaction, and that the sale price of the homes was their "fair value" for tax purposes. It ordered the assessor to adjust the taxable value to match the sale price of the units.

The county assessor timely appealed the county board's decision to the State Board of Equalization. The state board reviewed the evidence on file and briefs submitted by the parties and issued its findings, conclusions, and order on August 31, 1989. The state board concluded that the price received by Union Pacific in its sale of the mobile homes was not their "fair value" because the sale was not a "market place transaction" under Wyoming State Tax Commission/State Board of Equalization rules. The state board reversed the decision of the county board and remanded the case to the county board for reassessment, taking into account the actual condition of the homes and providing an adequate allowance for depreciation.

Union Pacific then petitioned the district court for judicial review of the state board's decision. The district court issued a decision letter on February 14, 1990, upholding the decision of the state board. The district court found that the question of "[w]hether the pricing decision of the market can be accepted as 'fair market value'" presented a question of law for which it was not required to accept the findings of the county board. The court found that the sale at issue was in the

nature of a wholesale transaction, and that valuation should be determined by reference to the price to be paid by the ultimate consumer. It upheld the state board's remand of the case to the county board.

The scope of our review of agency decisions is limited to the extent specified in W.R.A.P. 12.09 and W.S. 16–3–114(c) (July 1990 Repl.). Wyoming Statute 16–3–114(c) states:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

■ In considering an appeal from a district court's review of agency action, we are not bound by, nor must we accord any special deference to, the district court's decisions on questions of law. *Matter of North Laramie Land Co.*, 605 P.2d 367, 373 (Wyo.1980). The deference we accord to the fact finder's determination of fact belongs to the administrative agency, not the district court. *Wyoming Public Service Comm'n v. Hopkins*, 602 P.2d 374, 377 (Wyo.1979).

"[U]sing the same evidentiary materials and the same review standards as the district court, we conduct an independent inquiry into the matter, just as if it had proceeded directly to us from the agency." *Southwest Wyoming Rehab. Center v. Employment Sec. Comm'n*, 781 P.2d 918, 920 (Wyo.1989).

Since in this case the county board was the finder of the fact and the state board heard no additional testimony, we will treat the state board as an intermediate level of review and accord deference only to the county board's findings of fact. Thus, the primary focus of our review will be whether the county board's decision was lawful and supported by substantial evidence.

The Sweetwater county board found that it had jurisdiction over Union Pacific's protest and appeal; that the mobile homes were sold pursuant to an invitation to bid and purchased by one buyer; that they were assessed in late 1987 as omitted property; that the county assessor had followed state direction for valuing mobile homes at 25% of their 1967 fair market value; and that, at the time of the sale, the county assessor was unaware of the sale price or the nature of the sale transaction. It further found that the value of the mobile homes as assessed far exceeded the value for which they were sold; that the homes had not been inspected by the county assessor; and that the deputy county assessor, Marvin Applequist, had admitted that the sale met all of the elements of a fair value sale. Finally, the board found that the information and data regarding the sale were within the definition of information or data that the county assessor should consider in determining fair value.

We find these material facts are supported by substantial evidence and will not seek to substitute our judgment for that of the agency. It is the agency's conclusions of law which are primarily in dispute in this appeal.

The board made the following conclusions of law in this case:

"1. That the sale made by the Union Pacific Corporation to Ponderosa Village

of Cheyenne, Wyoming, was an arms-length, bona fide commercial transaction.

"2. That the terms of the above-referenced sale did and do constitute the best information available to the County Assessor with respect to value.

"3. That the amount received by Union Pacific Corporation with respect to said mobile homes is the fair value of said mobile homes in accordance with the rules and regulations of the Wyoming State Tax Commission, Chapter 22, Section 4(a)."

Proper analysis of the board's conclusions requires that we clarify a threshold question of administrative procedure. The district court questioned whether the county board's conclusions of law were legal conclusions or were actually agency findings of fact in disguise. We determine that the county board's conclusions were neither wholly conclusions of law nor findings of fact, but were rather findings of *ultimate fact* or of *mixed questions of law and fact*. We will take this opportunity to clarify the rules applicable to judicial review of mixed questions of law and fact.

The federal third circuit has articulated the difference between findings of basic fact and ultimate facts as follows:

"*Basic facts* are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings. Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. * * * No legal precept is implicated in drawing permissible factual inferences. But an *inferred fact* must be distinguished from a concept described in a term of art as an '*ultimate fact*.' So conceived, an ultimate fact is a mixture of fact and legal precept[.]" *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3rd Cir.1981) (emphasis added).

Davis gives examples of such ultimate facts, or mixed questions of law and fact, in his Administrative Law Treatise:

"Mixed questions of law and fact are common throughout the law. Some easy samples: Is X the owner? Is the book obscene? Is the foreman an employee? Is the reorganization plan fair and equitable? Was the defendant negligent?" 5 Davis, *Administrative Law Treatise* § 29:9 at 367 (2nd ed. 1984).

■ The distinction in our standard of review of agency findings of fact and conclusions of law is well established. When reviewing an agency's findings of fact, we look to see if we can find from the evidence preserved in the record a rational view for the findings of fact made by the agency. If so, we then say the findings are supported by substantial evidence, and our review of them is complete. *Holding's Little America v. Board of County Comm'rs*, 670 P.2d 699, 704 (Wyo.1983).

Our standard of review for agency determinations of questions of law requires us to examine three distinct possibilities:

"The agency may correctly apply their findings of fact to the correct rule of law. In such case, the agency's conclusions are affirmed. But the agency could apply their findings of fact to the wrong rule of law or they could incorrectly apply their findings of fact to a correct rule of law. In either case, we correct an agency conclusion to ensure accordance with law. Our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed; if it is not, it is to be corrected." *Employment Security Comm'n v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871 (Wyo.1990) (citations omitted).

■ When an agency's determinations contain elements of law and fact, we will not treat them as findings of fact. We extend deference only to agency findings of "basic fact." When reviewing a finding of "ultimate fact," we divide the factual and legal aspects of the finding to determine whether the correct rule of law has been properly applied to the facts. If the

correct rule of law has not been properly applied, we do not defer to the agency's finding but correct the agency's error in either stating or applying the law. *See, Cooley v. Hollister,* 38 Wash.App. 447, 687 P.2d 230, 233 (1984); *Mill Street Church of Christ v. Hogan,* 785 S.W.2d 263, 266 (Ky. App.1990); *Cf. Forbes v. Poudre School Dist. R-1,* 791 P.2d 675, 679 (Colo.1990) (agency appellate level had responsibility to make own ultimate findings of fact, which could differ from those of ALJ); *and see generally,* 2 Am.Jur.2d *Administrative Law* §§ 618, 670 (1962) and cases cited therein. *But see, Comptroller of Treasury v. World Book Childcraft International, Inc.,* 67 Md.App. 424, 508 A.2d 148, 156 (1986) (great deference to agency application of law to facts).

We now address the county board's conclusions of law to determine whether the agency properly applied the correct law to facts supported by substantial evidence. The board's conclusion that Union Pacific's sale price was the fair value of the mobile homes for tax purposes rests on its conclusions that the sale was an "arms-length, bona fide transaction" whose terms "constituted the best available information" with respect to value. Our ultimate concern is whether the agency properly determined, by a permissible application of authority to the facts, that the sale price constituted "fair value."

Wyoming Statute 39–2–102 (May 1985 Repl.), in effect at the time, provided:

"All taxable property shall be valued at a fair value in conformity with the values and procedures prescribed by the board as provided by this act."

The Rules and Regulations of the Wyoming State Tax Commission, ch. XXII, § 4(a) described "fair value" as follows:

" 'Fair value' is defined as the amount in cash, or terms reasonably equivalent to cash, that a well informed buyer is justified in paying for a property and a well informed seller is justified in accepting, assuming that neither of the parties thereto are acting under undue compulsion and assuming further that the property has been offered in the marketplace for a reasonable length of time."

There is a split in authority on the question of whether the price paid in a fair sale is conclusive evidence of a property's value for tax assessment purposes. *See generally,* Annotation, *Sale Price of Real Property as Evidence in Determining Value for Tax Assessment Purposes,* 89 A.L.R.3d 1126 (1979). Our previous cases have not directly addressed this question, and we do not need to resolve it in this appeal. The real question is whether Union Pacific's sale of the trailers was for "fair value" under the requirements of the tax commission rule.

■ The major point of contention concerning the sale is whether the trailers were "offered in the market place for a reasonable length of time." We find that they were not.

At the county board hearing, Janet Culp, a Union Pacific agent, testified as follows:

"In late April of 1987, Union Pacific advertised and sent out *bid requests to one hundred mobile home dealers.* Bids were on an individual basis on twenty-nine mobile homes, seventeen of which were located in [Sweetwater] County. Bids ranged from five hundred dollars to three thousand one hundred dollars [per unit]." (emphasis added)

The invitation to bid sent by Union Pacific instructed bidders to "submit your written quotation by utilizing pre-addressed envelope."

In *Guild Wineries and Distilleries v. Fresno County,* 51 Cal.App.3d 182, 124 Cal.Rptr. 96, 98 (1975), the California Court of Appeals defined an "open market transaction" for tax purposes as follows:

"An 'open market' transaction is one where the sale price is negotiated between the buyer and seller as distinguished from a sale resulting from the submission of bids where the seller sells to the highest bidder or the buyer buys from the lowest bidder."

In *Miller v. Corporation Comm'n,* 635 P.2d 1006 (Okla.1981), the Oklahoma Supreme Court stated, in a case involving the

fair market value of forcibly pooled minerals, that a sale on the open market contemplates face-to-face negotiations at arms length. "By its very nature, the sealed-bid process is incompatible with an open market sale." *Miller,* at 1008.

In this case, the submission of bid letters to one hundred mobile home dealers and the receipt of sealed bids did not provide the give and take between buyer and seller that constitutes an open market sale. We are unwilling to say that no auction of a property could ever provide its fair value for tax assessment purposes. But where a property is only offered to dealers using sealed bids and the value paid by the successful bidder is grossly disproportionate to the assessed value (accounting for depreciation), we hold that fair value is not established by the sale, and the assessor may disregard the sale price in favor of other proper criteria used to determine fair value.

The county board of equalization's conclusion in this case that the amount received by Union Pacific was fair value is erroneous as a matter of law. We affirm the district court's order. Reassessment should be accomplished under the guidelines set forth in this opinion and that of the state board.

Affirmed.

URBIGKIT, C.J., filed a specially concurring opinion.

THOMAS, J., filed a dissenting opinion.

URBIGKIT, Chief Justice, concurring.

I agree with the majority in determining that the reassessment ordered by the State Board of Equalization after affirmation by the district court should now be affirmed by this court. There is, alternatively, a more basic reason for my decision founded within a fundamental precept of assessment for taxation which should also be recognized. I write this concurrence for the same reason and with the same constitutional perspective utilized in the concurrence in *Teton Valley Ranch v. State Bd. of Equalization,* 735 P.2d 107 (Wyo.1987).

Empirical market value to the extent determinable, by whatever process, for an individual piece of property or parcel of land, for condemnation or estate valuation, is different from the requirement of taxation which addresses the class and not the individual parcel. In assessment for taxation, it is the rational method equally applied which is the search and not the contemporary sale price or appraiser's estimate of value.

The constitutional provision in effect until adoption of the November 1988 amendment provided:

All property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal.

Wyo. Const. of 1890, art. 15, § 11.

The 1988 constitutional amendment provided:

(a) All property, except as in this constitution otherwise provided, shall be uniformly valued at its full value as defined by the legislature, in three (3) classes as follows:

(i) Gross production of minerals and mine products in lieu of taxes on the land where produced;

(ii) Property used for industrial purposes as defined by the legislature; and

(iii) All other property, real and personal.

(b) The legislature shall prescribe the percentage of value which shall be assessed within each designated class. All taxable property shall be valued at its full value as defined by the legislature except agricultural and grazing lands which shall be valued according to the capability of the land to produce agricultural products under normal conditions. The percentage of value prescribed for industrial property shall not be more than forty percent (40%) higher nor more than four (4) percentage points

more than the percentage prescribed for property other than minerals.

(c) The legislature shall not create new classes or subclasses or authorize any property to be assessed at a rate other than the rates set for authorized classes.

(d) All taxation shall be equal and uniform within each class of property. The legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal.

Wyo. Const. art. 15, § 11 (1890, amended 1988).

This constitutional requirement, as more specifically addressed in the concurrence in *Teton Valley Ranch,* is equality and uniformity. Those criteria address a method to fairly impress the responsibility of taxation upon similar items of property without individually differentiating because of claimed conflicts with "market value." *Bunten v. Rock Springs Grazing Ass'n,* 29 Wyo. 461, 215 P. 244 (1923). "Exact justice in matters of taxation is not possible * * * [v]aluation being largely a matter of opinion." *Id.* at 476, 215 P. 244.

The point to be made is that these mobile homes cannot be assessed for taxation at a value below comparable properties owned by individual homeowners situated in Sweetwater County or, for that matter, of valuation anywhere in the state of Wyoming. Specifically, geographical location cannot be used to tax a unit at 2.8063% of what the normal taxpayer in Rock Springs could be expected to pay for an equivalent unit. This record provides absolutely no documentary evidence that the condition of the tax no. 17196 mobile home once situated at Bitter Creek [1] with a normally assessed valuation of $17,817 was only worth 2.8063% of what a similar unit might have been for comparable taxation purposes when used by a homeowner in Rock Springs or Green River or in Cheyenne, Laramie County, where the purchaser was located.[2]

1. The unit is a 1973 24' × 60' Gentry mobile home unit computed by the assessor for assessment purposes on an eighty-one percent depreciation basis resulting in a $2,049 assessment valuation upon which the levy of .073994 resulted in a tax obligation of $151.61. The assessor's ad valorem tax bill for the entire seventeen units totaled $2,789.76. The Bitter Creek unit reassessment by the Board of Equalization resulted in a "fair" value of $500 with an assessed value of $58 and a tax of $4.29 to result in a Sweetwater County refund to Union Pacific of $143.62. Refund amounts under the County Board of Equalization for the seventeen units totaled $2,625.52.

To reach the present stage of Supreme Court decision, the Bitter Creek unit, tax no. 17196, was appraised by the Sweetwater County assessor, contested in hearing and reversed by the Sweetwater County Board of Equalization, reversed by the State Board of Equalization, affirmed by the district court and now subject to this decision. Not yet ended by return for reappraisement to the assessor of Sweetwater County the novelette or parable of tax no. 17196, wherever it may now be, would make interesting reading.

2. I would not particularly subscribe to repetition in anything but dissent or special concurrence, but the county assessor's brief filed before the State Board of Equalization, in introduction, provided:

PARABLE OF THE AMICABLE DIVORCE
A not so very long time ago in a galaxy known as San Francisco, it is reputed that a married couple—each in his and her own realm a young urban professional—made a determination that marital bliss was not theirs to have. It was agreed that, given the intellect, sophistication, maturity and stability of Mr. and Mrs. Yuppie, an amicable division and disposition of their rather substantial marital estate would be appropriate and could be achieved.

The real property of the parties—a town home and a country estate—were set over to Mrs. Yuppie. The Yachts, the Maserati sports car, the Cessna airplane and the computer equipment were set over to Mr. Yuppie. Shortly after the divorce—but before Mr. Yuppie could take possession of his portion of the property—his transfer to New York was approved, along with that of Miss Interloper, his secretary. Mr. Yuppie asked his ex-wife if she would store his toys for him and forward them to him as he requested. Being mature, sophisticated and of an even unvengeful temperament, Mrs. Yuppie was only too glad, she said, to accommodate her ex. Over the next eighteen months, Mrs. Yuppie shipped several computers, two yachts and untold other luxury items to Mr. Yuppie. She ferried the Cessna airplane to him upon his request—which is when she learned about his relationship with Miss Interloper.

Soon after learning about Miss Interloper, Mrs. Yuppie received an urgent request from her ex-husband: "Business reversal—need quick cash—sell Maserati and send money to me. Mr. Y." The following ad appeared in the paper the following morning:

My challenge to the challenge of Union Pacific is lack of proof that the statewide valuation system for mobile homes is improper or that, even if proper, the process used in this particular case was infirm; for example, because of lack of inspection or denial of evidence of extremely depreciated condition. The only thing that the sales price material demonstrates to me is that Union Pacific wanted to get rid of the units and eliminate possible property taxation. costs. Mobile home dealers, at that time and place and in consideration of the Wyoming economy, were not exceptionally eager to pick up the geographically scattered units.[3]

It would appear from the sketchy record available that the units were sold in 1987 to Ponderosa Village, a mobile home park operator and wholesaler in the Cheyenne, Wyoming area. It would be interesting to compare (to the extent that units were actually moved to the Cheyenne area following sale) what tax assessment value came to be applied on these units in Laramie County as compared to other units owned by the purchaser or otherwise situated and assessed for value in Laramie County. It does not appear that anyone has addressed this subject of what Ponderosa Village did with the units after acquisition. Whatever may have occurred after incurring the moving expenses from the rural locations where the units had been used by the former owner, tax assessments cannot operate on a geographically distinguished standard so that every separate piece of new property in Wyoming is valued at miles from somewhere and particular location.

We cannot expect more and should not accept less than that the taxation system provides a formula realistically directed towards a value determination uniformly applied to all kinds of property of an equal and similar character. *Hillard v. Big Horn Coal Co.*, 549 P.2d 293 (Wyo.1976); *State ex rel. Greenwood v. Pearson*, 46 Wyo. 307, 26 P.2d 641 (1933); *Bunten*, 29 Wyo. 461, 215 P. 244. If we reduce valua-

tions for these seventeen units, then each mobile home owner in Wyoming is entitled to equivalent treatment for his property by application of the constitutional requirement of equality and uniformity within each class of property. Wyo. Const. art. 15, § 11(d). See the cases listed in the concurrence in *Teton Valley Ranch*, 735 P.2d at 115 and I J. Bonbright, The Valuation of Property Ch. XVIII, *Valuation for Tax Purposes: The General Property Tax* (1937).

THOMAS, Justice, dissenting.

I would reverse the order of the district court that affirmed the decision of the Wyoming State Board of Equalization, and I would reinstate the decision of the Sweetwater County Board of Equalization. The rules relating to review of administrative agency decisions, which are clearly and ably recounted in the majority opinion, lead ineluctably to the conclusion that the determination by the Sweetwater County Board of Equalization, the finder of fact in this case, should be sustained.

As the majority opinion states:

"The major point of contention concerning the sale is whether the trailers were 'offered in the market place for a reasonable length of time.'" At 861.

The majority opinion then invokes the verb "find," that usually connotes factual matters, and rules that they were not so offered. The State Board of Equalization, whose decision the majority upholds, is bound to the facts found by the Sweetwater County Board of Equalization in the same way that the district court, or this court, is bound to those facts, and the State Board failed to afford the deference that was due to the findings of the Sweetwater County Board of Equalization.

The question, as captured by the quoted language from the majority opinion, is not a mixed question of law and fact. It is a pure question of fact. The cited cases that

---

"FOR SALE: 1988 Maserati, immaculate condition; still on warranty; low mileage; appraised at $60,000.00. Will sacrifice for 50.00."

3. From the listed locations, these seventeen units were scattered along the Union Pacific railroad track at places from the first to the last more than 100 miles apart.

define an "open market transaction" are of no help in determining whether the house trailers were offered in the market place for a reasonable time.

Section 39–2–102, W.S.1977 (July 1990 Repl.) does not require an "open market transaction," but instead delegates to the Wyoming State Board of Equalization the authority to "prescribe the appraisal methods and systems for determining fair market value using generally accepted appraisal standards." The definition of "fair value" found in Chapter XXII, § 4(a), Rules and Regulations of the Wyoming State Tax Commission (1989), does not demand an "open market transaction" either. It simply says:

> " 'Fair value' is defined as the amount in cash, or terms reasonably equivalent to cash, that a well informed buyer is justified in paying for a property and a well informed seller is justified in accepting, assuming that neither of the parties thereto are acting under undue compulsion and assuming further that the property has been offered in the marketplace for a reasonable length of time."

It is this standard that the Sweetwater County Board of Equalization found was met by the sale conducted in this instance. That board had no occasion to be concerned with an "open market transaction," and neither does this court.

I have more sympathy with the constitutional premise advanced in the concurring opinion of the Chief Justice. The definition of "fair market value" set forth in the Rules and Regulations of the Wyoming State Board of Equalization may not meet the mandate of Wyo. Const. Art. 15, § 11(d) that "[a]ll taxation shall be equal and uniform within each class of property." However, that is not an argument that has been advanced or briefed by the parties in this case and, in my judgment, it would not be appropriate to resolve the case in a constitutional context without briefing and argument and without the issue being raised by the parties.

I can see nothing in this case other than a straightforward question of whether there was evidence to sustain the facts found by the Sweetwater County Board of Equalization. It is my conclusion that there was sufficient evidence. I would reverse the district court and the Wyoming State Board of Equalization and would reinstate the decision of the Sweetwater County Board of Equalization on the basis of the authority correctly cited and analyzed in the majority opinion.