**HOLLY SUGAR CORPORATION,**
Appellant (Petitioner),

v.

**STATE BOARD OF EQUALIZATION FOR the STATE OF WYOMING,**
Appellee (Respondent).

No. 92–13.

Supreme Court of Wyoming.

Oct. 14, 1992.

Bob C. Sigler and Jerry M. Smith, of Sigler and Smith Law Office, Torrington, Stanley K. Hathaway, Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., Thomas D. Roberts, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

Holly Sugar Corporation petitioned the Goshen County District Court to review an order of the State Board of Equalization which for 1990 tax purposes set the fair market value (FMV) of its Torrington, Wyoming sugar factory at $18,886,898. The State Board's order affirmed and modified in part an order of the Goshen County Board of Equalization which had set the FMV of the Torrington factory at $21,401,-812. Upon stipulation of the parties, the district court certified the case to this court for review pursuant to Wyo.R.App.P. 12.-09. We will reverse and remand.

## ISSUES

Holly presents these issues:

1. Whether the findings of fact, conclusions of law and order of the State Board of Equalization, determining that the fair market value of appellant's Torrington factory for the year of 1990 is the sum of $18,886,898, are arbitrary, capricious, contrary to law and not supported by substantial evidence.

2. Whether the decision of the State Board of Equalization determining the valuation of the Holly Sugar factory at Torrington, to be more than double the valuation fixed for a very similar factory owned by appellant at Worland, Wyoming, violates the equal and uniform requirements for valuation on all property in the several counties as prescribed and set forth in Article 15, Sections 10 and 11 of the Wyoming Constitution, and wheth-er the State Board of Equalization has the obligation to equalize and make uniform the taxation within the same class of property.

3. Whether the increase in the assessed valuation of appellant's Torrington factory for 1990, is in violation of Chapter 73, Section 3, of the Wyoming Session Laws of 1988, insofar as the increased valuation exceeds the 1989 assessed valuation by more than twenty-five percent.

4. Whether the failure of the Goshen County Board of Equalization to adopt rules of practice and regulations prescribing contested case procedures under the Wyoming Administrative Procedure Act, as required by Section 16–3–102 W.S., denied appellant due process.

5. Whether the order of limited remand issued by the State Board of Equalization, under date of June 13, 1991, remanding to the Goshen County Board of Equalization for amendment of its written decision to include basic factual findings utilizing only the evidence in the record, occurring after the briefs had been filed and after final arguments by the parties to the State Board of Equalization, was lawful and whether the same affords due process to appellant.

## FACTS

Holly Sugar Corporation consists primarily of eight sugar factories located in various Western States. It is a wholly owned subsidiary of Imperial Holly Sugar Corporation. Imperial Holly was formed in 1988 following the consummation of an acquisition and merger agreement between Imperial Sugar Company and Holly. The acquisition and merger took place in three essential steps: first, Imperial Sugar purchased two-thirds of Holly stock by public tender offer of $108 per share; second, Imperial Sugar merged with Holly and became Imperial Holly; and third, the remaining one-third of Holly stock was converted into Imperial Holly stock on a one-for-three ratio.

* Chief Justice at time of oral argument.

Holly has one sugar factory in Worland, Washakie County and another in Torrington, Goshen County, Wyoming. Both factories were constructed in the 1920's. Thos. Y. Pickett & Company, Inc. (Pickett) estimated the FMV of the two factories for the 1987, 1988 and 1989 tax years using the Reproduction Cost New Less Depreciation (RCNLD) method of appraisal.[1] FMV under the RCNLD method is calculated essentially as follows: FMV = (reproduction cost new − [physical depreciation + functional obsolescence + economic obsolescence]).[2] The estimated FMVs of the Worland and Torrington factories were relatively close in 1987, 1988 and 1989. Illustrative are the 1989 figures: Worland—$7,020,045 and Torrington—$9,734,850.

In 1990, Washakie County employed the services of Pickett, while Goshen County did not. Pickett established a 1990 FMV for the Worland factory at $8,139,785; the Goshen County Assessor established a 1990 FMV for the Torrington factory at $30,399,680. The 300 percent increase in the estimated FMV of the Torrington factory from 1989 to 1990 resulted in a corresponding increase in tax liability, i.e., from $82,197.42 to $272,893.52. This increase occurred primarily because the Goshen County Assessor did not allow a FMV adjustment for functional or economic obsolescence, while Pickett in Washakie County allowed its customary adjustment of 61.9 percent.

Following receipt of its 1990 tax notice, Holly submitted a letter of protest and filed a motion for a hearing before the Goshen County Board of Equalization.

The County Board denied both Holly's request for a reduction in valuation and its motion for a hearing. Holly appealed the denial of its motion for a hearing to the State Board of Equalization. On October 16, 1990, the State Board ordered the County Board to afford Holly an evidentiary hearing in compliance with the Wyoming Administrative Procedure Act and issue a written decision on or before December 31, 1990.

The County Board held a contested case hearing on December 18 and 19, 1990. Holly presented testimonial evidence from corporate financial and engineering executives, from the Torrington factory manager, and from the president of Consilium, Inc., a professional appraisal company. This testimonial evidence, supported by numerous exhibits, covered such topics as the Holly buy-out; capital expenditures on the Worland and Torrington factories; physical, production and tax similarities between the two factories; the current state of the sugar industry; and the FMV of the Torrington factory as estimated by the market, income and cost methodologies of appraisal. The essence of Holly's case was that the Worland and Torrington factories are similar and that they should be taxed similarly. Holly contended that the true FMV of the Torrington factory was in the neighborhood of $10,000,000, rather than $30,000,000 dollars.

The Goshen County Assessor presented testimonial evidence from office personnel, as well as from a representative of the Ad Valorem Division of Wyoming's Department of Revenue and Taxation. The thrust

1. RCNLD is also used as an abbreviated form of the Replacement Cost New Less Depreciation method of appraisal. The terms reproduction and replacement were used loosely throughout the record; however, there appears to be a technical distinction between them. The replacement approach starts with the cost of building a state-of-the-art facility and then makes necessary adjustments, while the reproduction approach starts with the cost of rebuilding exactly what exists and then makes necessary adjustments. Because the reproduction approach was the one applied in this case, we use RCNLD to denote that methodology.

2. The terms functional obsolescence and economic obsolescence have been defined as follows:
   "Functional obsolescence—This is the adverse effect on value resulting from defects in design that impair utility. It can be caused by changes over the years that have made some aspect of the structure, material or design obsolete by current standards."
   "Economic Obsolescence—This is the adverse effect on value resulting from influences outside the asset itself. This includes changing property or land use patterns, adverse economic climates, legislative or legal changes, ruinous competition and other such external forces."

of this testimony, which was also supported by numerous exhibits, was that the Goshen County Assessor valued the Torrington factory in accordance with RCNLD guidelines contained in the "State of Wyoming Industrial Facilities Handbook." The Deputy County Assessor explained that, as outlined by the handbook, she took the original installation costs associated with the Torrington factory and trended those figures up to present value to determine reproduction cost. A trending table was provided by the state. She next multiplied the reproduction cost by a "percent good" factor taken from a state-provided depreciation table to arrive at a RCNLD figure of $30,399,680. The Deputy County Assessor explained that she did not adjust the RCNLD figure for functional or economic obsolescence because Holly had failed to provide her with sufficient information.

On December 24, 1990, the County Board issued an order in which it established the FMV of the Torrington factory at $21,401,-812. The County Board reached this figure by adjusting the County Assessor's FMV figure of $30,399,680 for functional obsolescence in the amount of $7,331,000 and for economic obsolescence in the amount of $1,666,868. The County Board did not explain how it arrived at its obsolescence figures, but did explain that continued application of Pickett's combined obsolescence adjustment of 61.9 percent was not warranted due to management, market and facility improvement.

Holly appealed the County Board's order to the State Board. The State Board accepted briefs and held oral argument on June 12, 1991. On June 13, 1991, the State Board issued an order of limited remand to the County Board, directing it to amend its order to include basic findings of fact from the existing record to support its FMV figures. The State Board instructed the County Board to submit its amended order by July 2, 1991, and provided that written arguments would be received from the parties until July 15, 1991.

On July 1, 1991, the County Board submitted an amended order which revealed how it had arrived at the figures for func-

tional and economic obsolescence. As regards functional obsolescence, the County Board explained that it adopted, with minor exceptions, the figures from a 1986 Consilium appraisal of the Torrington factory. As regards economic obsolescence, the County Board explained that it used information from Holly's income statement to calculate the figure according to a formula in "Estimating Economic Obsolescence of Operating Industrial Plants," written by Tom Skogstad (Assessment Digest, Nov/Dec 1983). Holly filed an objection and response to the amended order on July 12, 1991, arguing that the State Board did not have authority to issue an order of limited remand and that the County Board's figures for functional and economic obsolescence were not supported by reason or evidence.

The State Board issued an order on August 16, 1991, in which it affirmed and modified in part the County Board's order. The State Board concluded that an additional adjustment of $921,600 should be allowed for functional obsolescence due to electrical generating incapacity. It also determined that the County Board's figure for economic obsolescence was the product of substantial interpretation of Holly's income statement, largely unexplained, and not supported by the record. Accordingly, the State Board adopted the economic obsolescence figure of $3,260,182 from the 1986 Consilium appraisal. Making the foregoing adjustments in value, the State Board ordered the FMV of the Torrington factory established at $18,886,898.

Holly petitioned the Goshen County District Court to review the State Board's order. Upon stipulation of the parties, the district court certified the case to this court for review pursuant to Wyo.R.App.P. 12.-09.

## STANDARD OF REVIEW

We review administrative cases certified to us pursuant to Wyo.R.App.P. 12.09 according to the standards applicable to a reviewing court of first instance. The scope of our review is defined by Wyo.Stat. § 16-3-114(c) (1990) and dictates a two-step

analysis. First, we review the whole record to determine if there is substantial evidence to support the agency's findings of fact. Substantial evidence is that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If substantial evidence exists, we cannot substitute our judgment for that of the agency, although different conclusions may have been drawn from the evidence. Second, we determine whether the agency's action is otherwise lawful. If it is, it will be sustained, and if it is not, it will be corrected. *Mekss v. Wyoming Girls' School*, 813 P.2d 185, 200 (Wyo. 1991).

## DISCUSSION

█ Before delving into the record, we comment upon Holly's fifth issue. Holly asserts that this case must be reversed because the State Board's order of limited remand poisoned the whole adjudicatory and review process. We disagree.

The County Board is an agency subject to the provisions of the Wyoming Administrative Procedures Act. *See* Wyo.Stat. § 16-3-101(b)(i) (1990). Section 16-3-110 requires an administrative agency to issue a written decision which contains findings of fact and conclusions of law following a contested case. The findings of fact must enable a reviewing tribunal to trace the agency's reasoning from the evidence in the record to its eventual findings of ultimate fact and legal conclusions. *E.g., Jackson v. State ex rel. Wyoming Workers' Comp.*, 786 P.2d 874, 878 (Wyo.1990).

In the instant case, the State Board was unable to determine the manner in which the County Board arrived at its obsolescence figures. Rather than issue a final order merely stating that there was an insufficient basis for meaningful review, the State Board issued an order of limited remand so the County Board could supplement its findings of fact. While we encourage agencies to be thorough in the first instance, we detect no principle of law that was violated by the State Board's order. *See* 2 Am.Jur.2d *Administrative Law* § 764 (1962). Had the State Board usurped the role of the County Board by dictating the findings of fact to be made on the evidence or had it not provided for an opportunity to respond to the amended order, we would have a different situation. The State Board's order of limited remand served only to expedite the end that presumably all parties desired—substantive review of the County Board's order. With similar intent, we proceed on appeal with a substantive review of the record as it relates to the order of the State Board and the amended order of the County Board.

█ Holly contends, as it has contended from the inception of this case, that the FMV of its Torrington factory is much lower than $30,399,680, $21,401,812, or even $18,886,898. Holly criticizes the County and State Boards for not relying upon the testimony of its expert, Steve Olson of Consilium Inc. Mr. Olson testified concerning the Torrington factory fee appraisal that Consilium had performed in anticipation of this litigation. He explained that Consilium appraised the factory using the cost (RCNLD), income and market methodologies. It was Mr. Olson's opinion that the market, or comparative sales, method of appraisal best reflected the FMV of the Torrington factory and that such FMV was $9,756,000.

As set-forth above, our task is not to determine which of various appraisal methods is best or most accurately estimates FMV; rather, it is to determine whether substantial evidence exists to support usage of the RCNLD method of appraisal, and, if so, whether substantial evidence exists to support the manner in which it was used. *See Teton Valley Ranch v. State Bd. of Equalization*, 735 P.2d 107 (Wyo.1987). In making these determinations, we look to the record of the County Board and afford deference only to its findings of fact. *Union Pacific R.R. Co. v. Wyoming State Bd. of Equalization*, 802 P.2d 856, 862 (Wyo.1990).

Proper evaluation of the record as it relates to the propriety of using the RCNLD method of appraisal requires a legal backdrop. Challenges to the valuation of property for the purpose of ad valorem tax

assessment generally are rooted in Wyo. Const. art. 15, § 11, which in its amended form provides in relevant part:

(a) All property, except as in this constitution otherwise provided, shall be uniformly valued at its full value as defined by the legislature, in three (3) classes as follows:

(i) Gross production of minerals and mine products in lieu of taxes on the land where produced;

(ii) Property used for industrial purposes as defined by the legislature; and

(iii) All other property, real and personal.

* * * * * *

(d) All taxation shall be equal and uniform within each class of property.[3]

Early on, Justice Blume recognized a truth inherent in the area of property valuation: "There is no such thing as absolute value. A stone cannot be other than a stone, but one man may give a different valuation to a piece of land than another." *Bunten v. Rock Springs Grazing Ass'n,* 29 Wyo. 461, 475, 215 P. 244, 248 (1923). Accordingly, this court has consistently interpreted Wyo. Const. art. 15, § 11 to require "only a rational method [of appraisal], equally applied to all property, which results in essential fairness." *Teton,* 735 P.2d at 115 (Urbigkit, J., summarizing Wyoming value-assessment-taxation jurisprudence in a concurring opinion).

The County Board found that the RCNLD method of appraisal was a rational means of determining the FMV of Holly's Torrington factory. The State Board upheld this finding as being supported by substantial evidence. Holly does not contend that the RCNLD approach is necessarily an irrational method of appraisal, but rather argues that the market approach is a more rational method of appraisal. As indicated by our foregoing discussion, however, Holly's argument is misguided. The record is replete with evidence which sup-

ports the County and State Boards' findings regarding the RCNLD approach. Both Consilium and Pickett used the RCNLD approach in their appraisals, as did the Goshen County Assessor. In fact, RCNLD was the method prescribed to the counties by the Ad Valorem Division of Wyoming's Department of Revenue and Taxation for the valuation of industrial property. Accordingly, we hold that substantial evidence exists to support the use of the RCNLD method of appraisal to determine the FMV of Holly's Torrington factory.

■ The County Board found that the RCNLD value of Holly's Torrington factory was $30,399,680, absent necessary adjustments for functional and economic obsolescence. The State Board also upheld this finding as being supported by substantial evidence. Holly does not seriously attack the evidentiary basis for these findings. Rather, the push of Holly's argument regarding the application of the RCNLD appraisal method is that neither the County Board nor the State Board made sufficient adjustment for functional or economic obsolescence. Specifically, Holly contends that there was no evidence in the record to support the County and State Boards' use of 1986 obsolescence figures to answer a 1990 obsolescence problem. We agree.

The County Board found that blind adherence to Pickett's combined obsolescence adjustment of 61.9 percent was not warranted due to management, market and facility improvements. Again, the State Board determined that substantial evidence existed to support this finding. Our review of the record confirms the determination of the State Board. The manner in which both Boards calculated functional and economic obsolescence is, however, suspect.

■ The County Board calculated its figure for functional obsolescence as follows:

**3.** Prior to the 1988 amendment, Wyo. Const. art. 15, § 11 provided: "All property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the legisla-

ture shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

8. The Goshen County Board of Equalization determined the amount of functional obsolescence using Petitioner's Exhibit 11 (Consilium Report) as a basis for its finding. Functional obsolescence is calculated for Petitioner's property on pages 67 through 70 of "Exhibit C" of the Consilium report. The Goshen County Board of Equalization adopted the calculations and figures set forth therein, with the following qualifications:

a) **FUEL COST**—The Goshen County Board of Equalization allowed $2,436,000.00 which was the full amount calculated by Consilium.

b) **ELECTRIC GENERATORS**—The County Board disallowed any credit for the incapacity of internal electric generation, as the production of electricity is not an essential function of a sugar factor[y].

c) **BULK STORAGE CAPACITY**—The County Board allowed $220,000.00 in this category, which is the amount Consilium calculated minus $660,000.00, being the sum the County Board determined to be excess labor. This deduction was made because excess labor costs, as calculated by Consilium, were allowed in full in that category as [set] forth below.

d) **EXCESS LABOR COSTS**—The County Board allowed $4,675,000.00 which was the full amount calculated by Consilium.

The amount of functional obsolescence properly allowable in the valuation of Petitioner's property in 1990 is:

Fuel Cost — $2,436,000.00
Bulk Storage — 220,000.00
Excess Labor — 4,675,000.00

Total Functional Obsolescence 7,331,000.00

Upon review, the State Board gave this assessment:

21. Petitioner's evidence under the cost approach resulted in an estimated functional obsolescence as of January, 1990, of $9,896,000 (employing the methods used in the 1986 appraisal). Petitioner's estimate of functional obsolescence in the 1986 appraisal was $8,913,000. The county board approved a total functional obsolescence of $7,331,000, relying upon the capitalized cost information from the 1986 appraisal and its opinion that certain costs either should not be allowed or were included in other categories. We conclude Petitioner's evidence of functional obsolescence as an adjustment to RCNLD in the January, 1990, appraisal is incomplete, and the higher 1990 functional estimate when compared against the 1986 appraisal is unexplainable given the capital investments which have been made since 1986 to improve functionality within the factory, the county board['s] use and reliance on the 1986 cost figures is appropriate and supported by the record.

22. Relying upon the 1986 detail included in the 1990 appraisal, we conclude the county board['s] estimate of redundant labor costs associated with insufficient bulk storage capacity is reasonable. The disallowance, however, of capitalized costs associated with undercapacity in the facility's internal electric generator, based upon a decision that the production of electricity is not an essential function of a sugar factory is not supported by the record. The unimpeached, uncontradicted testimony indicates a modern sugar plant would replace multiple, old style, inefficient, low pressure boilers with a more efficient system, reducing the plant's operating costs. Electricity is a substantiated cost of the production of sugar, and excess costs associated with this inefficiency results in the inability of the facility to adequately perform the sugar refinement process. We conclude therefore this cost category is an appropriate adjustment for functional obsolescence and should have been allowed. The only evidence in the record was presented by Petitioner, and supports an additional functional obsolescence adjustment of $921,600. The Board concludes this to be a reasonable, necessary adjustment absent other evidence or testimony to the contrary.

The record substantiates the State Board's evaluation of the functional obsolescence figures contained in Consilium's 1990 appraisal of the Torrington factory.

There is no evidence in the record, however, to support either the County Board's or the State Board's reliance upon "Exhibit C" of the 1990 Consilium appraisal to determine functional obsolescence. Exhibit C is a 1986 appraisal which Consilium made of Holly's Torrington factory in relation to a similar tax dispute. It was not introduced as evidence for the purpose of establishing 1990 obsolescence figures, but rather was contained in the 1990 Consilium appraisal because it was used as a springboard from which Consilium made its 1990 appraisal. The evidence in the record contradicts an inference that the variables which led to the 1986 functional obsolescence figures have remained static.

The County Board calculated its figure for economic obsolescence as follows:

9. The Goshen County Board of Equalization determined the allowable economic obsolescence based upon Respondent's "Exhibit M" (Holly Sugar Income Statement) and calculated using the procedures set forth in "Estimating Economic Obsolescence of Operating Industrial Plants", written by Tom Skogstad (ASSESSMENT DIGEST, Nov/Dec 1983) which was previously provided to the Goshen County Assessor by the Ad Valorem Tax Division, Wyoming Department of Revenue and Taxation, using Holly's figures for the years of 1989 and 1990 to calculate the "normal". The amount of economic obsolescence properly allowable in the valuation of Petitioner's property in 1990 is $1,666,868.00.

The State Board responded in this manner after review:

25. The county board's economic obsolescence calculations are essentially unexplained, but necessarily must be the result of substantial interpretation of Petitioner's cost and income information within the framework of a methodology in a published article. There was no opportunity for Petitioner to identify the interpretation given to its financial information, nor whether the application of the methodology was appropriate under the circumstances to value the facility at issue. We therefore find the county board conclusions on economic obsolescence to be unexplained and unjustified, and are consequently, arbitrary and unsupported by the record.

The record also substantiates the State Board's assessment of the County Board's economic obsolescence calculation. The State Board, however, went on to state:

26. Petitioner's analysis of economic obsolescence under the cost approach within the 1990 appraisal is however also unexplained, other than by general reflections of the state of the sugar industry over time and during changing economic conditions. Petitioner has a more detailed application of the methodology in the 1986 appraisal. Lacking any other appropriate information and calculation, the State Board accepts the 1986 information, and concludes the capitalized economic disadvantage suffered by the facility at issue is $3,260,182, not Petitioner's unexplained, undocumented figure of $6,570,000.

The State Board's criticism of Consilium's 1990 appraisal is well taken. However, its attempt to assuage Holly by adopting the economic obsolescence figures from the 1986 appraisal suffers from the same deficiencies as we identified during our discussion of functional obsolescence. Therefore, and for all of the reasons stated above, we hold that the County and State Boards' usage of the 1986 functional and economic obsolescence figures to answer a 1990 obsolescence problem was arbitrary and capricious as such action was not supported by substantial evidence. We reverse the order of the State Board and remand this case to the County Board for a hearing on 1990 functional and economic obsolescence.

In light of our resolution of this case, it would be premature to address whether the percentage disparity in the adjustment made for functional and economic obsolescence between the Worland and Torrington factories violates the equal and uniform taxation provisions of the Wyoming Constitution. Nor would it be timely to resolve Holly's claim that the 1990 rise in assessed value of its Torrington facility contravenes

the twenty-five percent limit contained in chapter 73, section 3 of the 1988 Wyoming Session Laws. Holly's claim to have been denied due process on account of the County Board's failure to adopt rules of procedure is without merit.

## DISPOSITION

The order of the State Board of Equalization which established the FMV of Holly's Torrington factory at $18,886,898 is reversed. This case is remanded to the Goshen County Board of Equalization for an evidentiary hearing to determine on competent evidence the 1990 adjustments for functional and economic obsolescence.