Jan Charles GRAY, Appellant
(Petitioner),

v.

WYOMING STATE BOARD OF EQUALI-
ZATION; and Valerie Reed, County As-
sessor, Converse County, Wyoming, Ap-
pellees (Respondents).

No. 94–19.

Supreme Court of Wyoming.

June 9, 1995.

Jan Charles Gray, Glenrock, appellant pro
se.

Joseph B. Meyer, Atty. Gen., Michael L.
Hubbard and Clinton D. Beaver, Sr. Asst.
Attys. Gen., for appellee Wyoming State Bd.
of Equalization.

Thomas A. Burley, Douglas, for appellee
Reed.

Before GOLDEN, C.J., and THOMAS,
MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

At issue in this case is the right of a
taxpayer, Jan Charles Gray (Gray), to have
his real property appraised at its purchase
price by the county assessor for purposes of
the *ad valorem* tax. The County Assessor
(Assessor), using a formula calculation, the
Computer Assisted Mass Appraisal (CAMA),
arrived at assessed valuations that were
much higher than Gray's purchase prices.
The assessed valuation actually used, howev-
er, was set by reducing the preceding year's
valuation by twenty-five percent pursuant to
1988 Wyo.Sess.Laws ch. 73, § 3.[1] Gray ap-
pealed these valuations to the Converse
County Board of County Commissioners, act-
ing as the County Board of Equalization
(County Board), but the County Board ap-
proved the valuations set by the Assessor.
Gray appealed that determination to the
State Board of Equalization (State Board).

---

1. 1988 Wyo.Sess.Laws ch. 73, § 3 provides, in
pertinent part:

    (a) For the tax year commencing January 1,
1989, and each tax year thereafter through
December 31, 1992, the assessed value of any
property shall not be adjusted by more than

twenty-five percent (25%) of the preceding
year's value except as provided by subsection
(b) of this section and except if the property
did not exist in the same form or was not
valued or taxed during the preceding tax year.

The State Board affirmed the County Board, and Gray pursued judicial review. The district court affirmed the decision of the State Board, and Gray appeals the decision of the district court. We are satisfied the valuation reached by the Assessor is supported by substantial evidence and was arrived at by a lawful method of valuing real property. We affirm the decision of the district court.

Gray has represented himself throughout these proceedings and, in his Brief of Appellant, he has not included a statement of the issues presented for review as required by WYO.R.APP.P. 7.01(d). It is clear the only issue he asserts is whether the purchase price of real property must be accepted as establishing the value of that property for purposes of tax assessment. The State Board and the Assessor, in a Brief of Appellee State Board of Equalization, articulate two issues as follows:

> I. Was there substantial evidence before the County Board of Equalization to support the County Assessor's 1991 valuation of Petitioner's property?
>
> II. Was the County Assessor's 1991 valuation of Petitioner's property in accordance with law?

Our review of cases testing the imposition of taxes is accomplished pursuant to WYO. R.APP.P. 12.09. We invoke the standards applicable to a reviewing court of the first instance. The scope of our review is defined in WYO.STAT. § 16–3–114(c) (1990). A tandem analysis is applied to resolve such cases. We first review the entire record to determine if there is substantial evidence to support the findings of fact by the agency. Substantial evidence is that quantum of relevant evidence which would be accepted by a reasonable mind as adequate to support the conclusion. We do not substitute our judgment on the facts for that of the agency if substantial evidence exists, even though different conclusions might be drawn from that evidence. If substantial evidence supports the agency's resolution, we then determine whether the action is otherwise in accordance with law. If the action does comport with the law, it must be sustained but, if it does not, it will be corrected. *Mekss v. Wyoming Girls' Sch.*, 813 P.2d 185 (Wyo.1991), *cert.*

*denied,* 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). *See also Bettcher v. Wyoming Dep't of Employment,* 884 P.2d 635 (Wyo.1994).

In this case, it is useful to examine the constitutional, legislative, and regulatory system of *ad valorem* property taxation in Wyoming. In *Rocky Mountain Oil and Gas Ass'n v. Bd. of Equalization,* 749 P.2d 221 (Wyo.1987), we held unconstitutional the statutory provisions adopted for taxing real property. We required the legislature to provide for uniform assessment to secure a just valuation and equal and uniform taxation in compliance with the pertinent constitutional provisions. The legislature addressed those concerns by sponsoring an amendment to the constitution to provide for uniformity of assessment of land and improvements. The provision, found in WYO. CONST. art. 15, § 11 (1890) (amended 1988) now reads (emphasis added):

> (a) All property, except as in this constitution otherwise provided, shall be **uniformly valued** at its **full value** as defined by the legislature, in three (3) classes as follows:

> \*    \*    \*    \*    \*    \*

> (iii) All other property, real and personal.

> \*    \*    \*    \*    \*    \*

> (d) All taxation shall be **equal and uniform within each class of property.** The legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal.

By constitutional provision and statutes, the State Board is charged with the administration of *ad valorem* property taxes. After amendment of the constitution, the legislature changed the provisions of Title 39 of the WYOMING STATUTES entitled, "Taxation and Revenue," adding two pertinent provisions. The first is found in WYO.STAT. § 39–1–304(a)(xiii) (1994) (amended 1989) and provides:

> [The board shall:] Prescribe the system of establishing the fair market value of all property valued for property taxation to

**ensure that all property within a class is uniformly valued.** (Emphasis added.)

The second provision is found in WYO.STAT. § 39–2–102 (1994) (amended 1991) and provides, with respect to the role of the State Board:

> All taxable property shall be annually valued at its fair market value. Except as otherwise provided by law for specific property, the board, only after recommendation from the director of the department [of revenue], **shall prescribe by rule and regulation the appraisal methods and systems for determining fair market value using generally accepted appraisal standards.** (Emphasis added.)

In accord with the statutes, the State Board has promulgated rules and regulations, which authorize several methods for valuing property and provide, in pertinent part:

> Section 6. *Appraisal Methods.* **The appraisal techniques that may be used by the county assessor * * * includes [sic] the approaches described in this section.** Each approach used shall be an appropriate method for the type of property being valued; that is, the property shall fit the assumptions inherent in the appraisal method in order to calculate or estimate the **fair value of the property.** Each approach used shall also consider the nature of the property or industry, and the regulatory and economic environment within which the property operates.
>
> (a) *The Sales Comparison Approach.* * * *
>
> (b) *The Stock and Debt Approach.* * * *
>
> (c) *Replacement Cost Approach.* * * *
>
> (d) *Reproduction Cost Approach.* * * *
>
> (e) *Historical Cost Approach.* * * *
>
> (f) *The Ellwood or Mortgage Equity Method.* * * *
>
> (g) *The Income or Capitalized Earnings Approach.* * * *
>
> (h) *Computer Assisted Mass Appraisal (CAMA).* * * *

RULES AND REGULATIONS OF WYOMING STATE BOARD OF EQUALIZATION, ch. XXII, Section 6. (Emphasis added.)

It is against these constitutional, statutory, and regulatory provisions that we test the assessed valuations in this case.

Gray purchased various types of property in Converse County through private and public sales. The Converse County Assessor issued assessment schedules for these properties for the 1991 tax year. Gray protested the appraisal values to the Assessor in a letter dated May 15, 1991. The Assessor then corrected certain errors in the assessment schedule and applied the same method of valuation. In attacking the assessment schedules, Gray relies upon the following purchase prices and the assessed valuation, although other values can be found in the record:

| PROPERTY IDENTIFICATION | ACTUAL SALES PRICE | ASSESSOR'S CAMA FAIR VALUE |
|---|---|---|
| Property # 1 | $ 45,000 | $234,000 |
| Property # 2 | $ 14,000 | $ 71,000 |
| Property # 3 | $ 23,000 | $173,226 |
| Property # 4 | $ 7,848 | $ 30,100 |
| Property # 5 | $ 851 | $ 11,900 |
| Property # 6 | $ 9,434 | $311,590 |
| **TOTAL** | **$100,133** | **$831,816** |

Gray appealed the corrected values reached by the Assessor to the County Board. At the hearing before the County Board, Gray submitted his evidence with respect to the purchase prices for the several properties. He argued these purchase prices, which were substantially below the values assessed by the Assessor, were conclusive evidence of the "fair market value" for these properties. In support of his position, Gray relies upon the definition found in WYO.STAT. § 39–1–101(a)(vi) (1990):

> "Fair market value" means the amount in cash, or terms reasonably equivalent to cash, a well informed buyer is justified in paying for a property and a well informed seller is justified in accepting, assuming neither party to the transaction is acting under undue compulsion, and assuming the property has been offered in the open market for a reasonable time * * *.

The Assessor testified she had used the CAMA, which is the method of appraisal adopted in the RULES AND REGULATIONS OF WYOMING STATE BOARD OF EQUALIZATION. This method of valuing property for purposes of *ad valorem* taxation does not rely solely

on the purchase price of the property in arriving at the valuation.[2]

The Assessor stated certain calculations made by Gray were in error. Gray's position is that, using the Assessor's valuation figures and "comparing comparable properties" of other owners, the Bronco Building is taxed at only $7.33 per square foot, and the Higgins Hotel/Paisley Shawl is taxed at only $7.86 per square foot. He contends his VT Motel (property #1) is taxed at $22.38 per square foot; La Cocina (property #2) is taxed at $33.55 per square foot; and the Coachman Motel (property #3) is taxed at $25.89 per square foot. The Assessor testified that according to the state main frame computer, the Higgins Hotel "costed" out at $29.14 per square foot. She stated:

> I don't exactly understand how he [Gray] arrived at his figures, but when you enter the data on any specific type of building you have use codes, you have land codes, you have structure codes, you have quality grade, you have condition and function, you have all of these items that go in to build a replacement cost new less depreciation on any specific type of building.
>
> We experimented with a lot of buildings up there [Glenrock] just to see what we were coming up with by changing and using the same type of use code or the same type of structure code on those, and they're all within the, I would say $25 to $40 range depending on the different grade, quality, condition, function, and so on.

The Assessor further testified sales prices can be good indicators of the market value, but they don't establish the market value for purposes of assessment for taxation. In her testimony, she explained CAMA was an appropriate method for the type of property being valued, and it considered the nature of the property and the regulatory and economic environment in which Gray's property existed. The Assessor assured the County Board the data for Gray's property was en-

tered correctly as was the data for all other properties in the county. She explained the goal since the 1988 legislation has been to afford uniform valuations throughout the county.

After the hearing, the County Board issued its findings of fact, conclusions of law and order and, in a letter dated July 22, 1991, it informed Gray it had approved the form of valuation set by the Assessor. Gray appealed this ruling to the State Board which affirmed the County Board after requesting additional findings. Gray pursued judicial review, and the district court affirmed the decision of the State Board.

In its decision letter, the district court stated Gray did not present any evidence of arbitrary or capricious action or an abuse of discretion by the Assessor. The court explained all of the statutes and rules must be read together and, in doing so, it is apparent the statutes were drafted to allow the development of an appraisal system much more complex than the mere recitation of purchase prices. The district court concluded substantial evidence was presented, demonstrating the Assessor had followed an appraisal method specifically authorized under the rules of the State Board. Gray appeals to this court from that ruling of the district court.

There are three factors in arriving at *ad valorem* taxes pursuant to the statutory scheme. Initially, the current value (full value, current market value, fair value) is established by the appraisal process. Next, the taxable value is determined by multiplying the assessed value by the debasement factor assigned to the properties' classification as provided by WYO.STAT. § 39–1–101(a)(xvii) (1994) (amended 1990). The mill levy for the county then is applied, and the actual property tax is computed.

■ The party who asserts an improper valuation is assigned the burden of proof when challenging the Assessor's valuation of

---

2. In a concurring opinion to the order of the State Board, the chairman explained CAMA is a relatively flexible computer system that automates certain appraisal methods, the replacement cost approach and the sales comparison approach, and is authorized under RULES AND REGULATIONS OF WYOMING STATE BOARD OF EQUALIZATION, ch. XXII, Section 6. This system does not eliminate judgments made by the assessor, which significantly influence the "system" value estimate.

property. *Teton Valley Ranch v. State Bd. of Equalization,* 735 P.2d 107 (Wyo.1987). We have said it is not the duty of this court

to determine which of various appraisal methods is best or most accurately estimates FMV [fair market value]; rather, it is to determine whether substantial evidence exists to support usage of the [particular] method of appraisal, and, if so, whether substantial evidence exists to support the manner in which it was used.

*Holly Sugar Corp. v. State Bd. of Equalization,* 839 P.2d 959, 963 (Wyo.1992).

Our examination of the record in this case reveals there is substantial evidence to support the conclusion of the County Board that the Assessor correctly valued Gray's properties for 1991. The second aspect of our review is to determine if the action of the County Board was lawful. Our rule is that the constitution of the State of Wyoming requires "only a rational method [of appraisal], equally applied to all property, which results in essential fairness." *Holly Sugar,* 839 P.2d at 964 (citing *Teton Valley Ranch,* 735 P.2d at 115). We conclude the CAMA, the method used in the valuation of Gray's property, conforms with the equal and uniform taxation requirements of the constitution. It "substantially covers the ground of the due process and equal protection clauses of the Federal and State Constitution." *Unemployment Compensation Comm'n of Wyoming v. Renner,* 59 Wyo. 437, 452, 143 P.2d 181, 186 (1943).

We construe statutes in *pari materia* with all of the relevant statutes, and we refuse to isolate one sentence out of the law and give it exclusive effect. We have said:

[W]e must heed this warning:

It is always an unsafe way of construing a statute * * * to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition.

*Parker Land & Cattle Co. v. Wyoming Game and Fish Comm'n,* 845 P.2d 1040, 1043 (Wyo.

1993) (citing *Int'l Trust Co. v. Am. Loan & Trust Co.,* 62 Minn. 501, 65 N.W. 78, 79 (1895), as quoted in Frank E. Horack, Jr., *The Disintegration of Statutory Construction,* 24 Ind.L.J. 335, 338 (1949)).

It is clear from the Constitution of the State of Wyoming and all of the relevant statutes that discrimination in a class is prohibited. Property must be uniformly valued and equally and uniformly taxed. The rules and regulations promulgated by the State Board, pursuant to statutory authority, authorize several methods of appraisal which may be used by the assessor to provide uniformity. Reliance upon actual sales prices, in lieu of the methods adopted by the State Board, may well lead to discrimination and lack of equality and uniformity. While one method of arriving at assessed valuation, the sales comparison approach, may rely upon actual sales, it is not limited to the sale price for the particular property involved. We hold the Assessor followed a valuation method properly adopted by the State Board in this case. It was applied uniformly to all properties and, like the district court, we do not perceive any arbitrary, capricious, or unlawful action by the Assessor, nor is there any abuse of discretion.

■ The focus of Gray's argument is upon the use of the actual sales price to establish "fair market value." His contention is that, in accordance with the definition of fair market value articulated in WYO.STAT. § 39–1–101(a)(vi), the best and exclusive evidence of fair market value is the actual transaction price.

Gray relies on a number of cases cited in Kristine Cordier Karnezis, *Sale Price of Real Property as Evidence in Determining Value for Tax Assessment Purposes,* 89 A.L.R.3d 1126 (1979). Those cases are claimed to stand for the proposition that the "price paid for realty in a bona fide, arm's-length sale is conclusive evidence of property's value for tax assessment purposes." 89 A.L.R.3d 164, § 4 (Supp.1994). Our examination of six of these cases demonstrates they do not support Gray's proposition.[3] Two of these cases

---

**3.** *Foreman & Clark of Iowa, Inc. v. Bd. of Review of City of Cedar Rapids,* 286 N.W.2d 169 (Iowa 1979). The appraised valuation resulted in the same value as the sales price when the sales price, as the starting point for assessment, was

appear to support the proposition that sales price is conclusive evidence of the value of the property for tax assessment but the language of the constitutions in those states differs from the Wyoming Constitution. Our constitution requires "equal and uniform" taxation within each class of property. The Ohio Constitution provides that land "shall be taxed by uniform rule according to value." OHIO CONST. art. XII, § 2.[4] The Constitution in Vermont provides that every member of society is bound to contribute his "proportion" towards the expense of protection of life, liberty, and property. VT. CONST. ch. I, art. 9. The Wisconsin Constitution provides, "[t]he rule of taxation shall be uniform." WIS. CONST.. art. VIII, § 1.[5] None of these constitutions demand equality. It is, indeed, easier for an assessor to address a constitution that requires only uniformity, and utilizing the sales price as the fair market value would achieve that result. It does not necessarily result in equality because, as we know, the market price of real property may rise and fall in cycles.

Gray's argument is defective in two additional respects. The use of the actual sales price for assessed value results in assessments that are not equal and uniform. They,

therefore, would not be correct, and this would violate our constitutional requirement of uniform valuation. Gray's own situation provides a clear example. His properties # 1, # 2, and # 3 were acquired from private individuals. His properties # 4, # 5, and # 6 are similar properties, but they were purchased from Converse County after it had acquired ownership of them for delinquent taxes. It is clear properties acquired in a sale by the county are not the product of a transaction in which the price is established by "the amount in cash, or terms reasonably equivalent to cash, a well informed buyer is justified in paying for a property and a well informed seller is justified in accepting, assuming neither party to the transaction is acting under undue compulsion, and assuming the property has been offered in the open market for a reasonable time * * *." WYO. STAT. § 39–1–101(a)(vi).

In asserting the properties acquired from the county were obtained at "auctions [that] were the highest form of fair market value transaction," Gray disregards *Union Pacific R.R. v. Wyoming State Bd. of Equalization,* 802 P.2d 856, 861 (Wyo.1990) (quoting *Guild Wineries and Distilleries v. Fresno County,*

discounted for a defective roof and increased for an existing lease.

*Erich Sternberg Realty Co., Inc. v. Louisiana Tax Comm'n,* 560 So.2d 868 (La.Ct.App. 1 Cir.1990), *cert. denied,* 567 So.2d 107 (1990). This court concluded a substantial difference can occur between the taxpayer's purchase price and "market value estimate" predicated upon prices paid in actual transactions and current listing.
*Southern Westchester Assoc. v. Assessor of City of Yonkers,* 122 A.D.2d 212, 504 N.Y.S.2d 745 (N.Y.A.D.2d Dept.1986). The trial court considered the converted use of the building to cooperative ownership and declined to use the property's sales price in assessing its value.
*W.T. Grant Co. v. Srogi,* 52 N.Y.2d 496, 438 N.Y.S.2d 761, 767, 420 N.E.2d 953, 959 (N.Y. 1981). The general rule as to such sales is "that the purchase price set in the course of an arm's length transaction of recent vintage, *if not explained away as abnormal in any fashion,* is evidence of the 'highest rank' to determine the true value of the property at that time." (Emphasis added, citations omitted.)
*Bliss Hotel Co. v. Thompson,* 378 P.2d 319 (Okla. 1962). Specific circumstances depressing the sale price of property would affect the use of the price as evidence of the property's value for tax purposes.

*Quad Assoc. v. Blair County Bd. of Assessment Appeals,* 130 Pa.Cmwlth. 62, 566 A.2d 1274 (1989). The price at which any property may actually have been sold either in the base year or in the current taxable year shall be considered, but shall not be controlling. The selling price, estimated or actual, shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the county.

4. *Spector Terminals, Inc. v. Nordonia Hills Sch. Dist. Bd. of Education,* 10 Ohio App.3d 194, 10 OBR 266, 461 N.E.2d 16 (1983). The court affirmed the decision to increase taxable value of property to the sales price as the best method of determining value, when such information is available, is an actual sale of such property between one who is willing to sell but not compelled to do so, and one who is willing to buy but not compelled to do so.

5. *Steenberg v. Town of Oakfield,* 167 Wis.2d 566, 482 N.W.2d 326 (1992). This court has consistently held it is error for an assessor to use other factors to assess the value of property if there is a recent arm's length sale, however, the assessor must use other factors to determine if there is an arm's length sale.

51 Cal.App.3d 182, 124 Cal.Rptr. 96, 98 (1975)), where we said:

> [T]he California Court of Appeals defined an "open market transaction" for tax purposes as follows:
>
> > "An 'open market' transaction is one where the sale price is negotiated between the buyer and seller as distinguished from a sale resulting from the submission of bids where the seller sells to the highest bidder or the buyer buys from the lowest bidder."

We went on to say that, in such a circumstance, the "fair value is not established by the sale, and the assessor may disregard the sale price in favor of other proper criteria used to determine fair value." *Union Pacific R.R.*, 802 P.2d at 862.

In Wyoming, the receipt of sealed bids does not establish a fair market value sale according to the statutory definition. If we adopt Gray's reasoning that properties # 1, # 2, and # 3 were to be assessed at their sales price, but properties # 4, # 5, and # 6 were to be assessed at their bid price, these two categories of property would not be assessed equally and uniformly. Furthermore, the valuation of Gray's properties # 1, # 2, and # 3 when compared with other properties in Glenrock would not be equal and uniform. The essence of Gray's position is that he would seek to have us establish by our decision a rule contravening the constitution.

Gray's contention that there are disparities between the square foot valuation of other properties in Glenrock and his properties is refuted by the testimony of the Assessor. A disparity such as Gray asserts could demonstrate a lack of equality and uniformity, but the record in this case is contrary to his position. Gray also urges this court to require the assessment of the properties he purchased at approximately twelve percent of the assessed valuation reached by the Assessor. Gray's position is that, while it would be fair for his property to be assessed at the lower valuation, it would not be unfair to other taxpayers to have their property assessed according to the formula. He suggests a double standard for assessment between taxpayers which does not comport with our constitutional and statutory requirements.

We turn then to Gray's assertion that the twenty-five percent limitation on changes and property values imposed by the 1988 Wyo. Sess.Laws should not apply. The purpose of 1988 Wyo.Sess.Laws ch. 73, § 3, was to provide for a gradual phase-in of the new statutes relating to property taxation. The legislature established a ceiling and a floor for changes in valuation from one year to the next. Regardless of the appraisal, the assessed valuation could not be more than twenty-five percent above the preceding year's value, nor could it be more than twenty-five percent below the preceding year's value, for any year from 1989 through 1992.

Gray contends his properties # 4, # 5, and # 6 were not valued in 1990 when they were owned by Converse County. The Assessor testified these properties were valued and the twenty-five percent reduction in valuation was granted to the properties in 1991 in accordance with the statutory requirement. Gray, however, contends there was an error committed because 1988 Wyo.Sess.Laws ch. 73, § 3(b)(vii), requires the reduction for properties # 1, # 2, and # 3 in 1989 and 1990. The Assessor refuted that claim by pointing out the assessments were not protested by the owners at that time saying, "[u]nless these properties are protested and there is an error discovered, there is no error."

The most perplexing aspect of Gray's position is that, even if the Assessor had adopted purchase prices as the values for these properties, the assessed valuations would have been the same. They could not be reduced more than twenty-five percent from the assessed values in 1990. This may well be the controlling feature in this case, although we hold the method used by the Assessor in establishing the assessed valuations was proper.

Gray's final argument is that the valuation reached violated his rights under the Wyoming Constitution and the Fifth Amendment to the Constitution of the United States. He also alleges his right to equal protection was violated. We are satisfied the statutes and

the rules and regulations which comport with WYO. CONST. art. 15, § 11 are in accord with due process of law and with other provisions of the Wyoming Constitution. They are intended to, and do, achieve equal protection.

We hold the Assessor appropriately applied the CAMA in arriving at assessed valuations in this case and was not bound to utilize the purchase price of the property in lieu of the appraisal method. The legislature and the State Board have diligently sought to establish equal and uniform methods for taxation of property in accordance with the constitution. It would be a travesty to arbitrarily disregard that system in favor of the utilization of a purchase price which would lead to wide disparity in the context of uniformity and equality.

The decision of the district court, which affirmed the decision of the State Board, is affirmed.