**AMOCO PRODUCTION COMPANY,**
Appellant (Petitioner),

v.

**WYOMING STATE BOARD OF EQUALIZATION,** Appellee (Respondent).
(Two Cases)

Nos. 94–171, 94–172.

Supreme Court of Wyoming.

July 14, 1995.

Rehearing Denied Aug. 16, 1995.

---

John L. Bordes, Jr., Amoco Corp., Chicago, IL, for appellant.

Joseph B. Meyer, Atty. Gen.; Michael L. Hubbard and Clinton D. Beaver, Sr. Asst. Attys. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

In Case No. 94–171, Appellant Amoco Production Company appealed to the district court from the decision in which Appellee Wyoming State Board of Equalization affirmed the Carbon County Assessor's valuation determination for Amoco's used oil and gas field equipment. In Case No. 94–172, Amoco appealed to the district court from the order in which the State Board of Equalization upheld the Park County Board of

Equalization's affirmance of the Park County Assessor's similar valuation determination. The district court certified the cases to this Court pursuant to W.R.A.P. 12.09(b).

We affirm.

### Issues

As the appellant in both cases, Amoco presents the following issues for our review:

A. Did the County and State Board of Equalization in affirming the Assessor's use of an arbitrary forty percent (40%) floor on used oil and gas field equipment create a sub-class of personal property in violation of the Wyoming Constitution?

B. Is the denial of first year depreciation and the application of a forty percent (40%) floor on used oil and gas field equipment in violation of the Equal and Uniform principles mandated by the Wyoming Constitution?

C. Does the treatment accorded used oil & gas field equipment violate the constitutional guarantees of Due Process & Equal Protection?

D. Did the County and State Board of Equalization commit reversible error by affirming the Assessor's determination of value based upon manuals, guidelines and schedules which were never promulgated pursuant to the Wyoming Administrative Procedure Act?

E. Were the decisions of the State Board of Equalization contrary to the laws of the State of Wyoming and unsupported by substantial evidence?

### Course of Proceedings

The course of proceedings in each of these cases is essentially undisputed. In Case No. 94–171, Amoco appealed from the Carbon County Assessor's 1993 valuation determination for its used oil and gas field equipment to the Carbon County Board of Equalization. The Carbon County Board of Equalization certified the case to the State Board of Equalization. The State Board of Equalization held a contested case hearing, issued findings of fact and conclusions of law, and affirmed the valuation determination issued by the Carbon County Assessor.

Case No. 94–172 had a different procedural history. In that case, Amoco appealed from the Park County Assessor's 1993 valuation determination for its used oil and gas field equipment to the Park County Board of Equalization. After holding a contested case hearing, the Park County Board of Equalization issued findings of fact and conclusions of law in which it upheld the valuation determination. Amoco appealed to the State Board of Equalization which, after conducting a limited appellate review of the case, affirmed the Park County Board of Equalization's decision.

Amoco appealed from both decisions to the district court, and the district court certified the cases to this Court pursuant to W.R.A.P. 12.09(b).

### Standards of Review

When we are reviewing cases which have been certified to us pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the reviewing court of the first instance. *Hepp v. State ex rel. Wyoming Workers' Compensation Division*, 881 P.2d 1076, 1077 (Wyo.1994).

We review an administrative agency's findings of fact by applying the substantial evidence standard. Our task is to examine the entire record to determine whether substantial evidence supports the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Romero v. Davy McKee Corporation*, 854 P.2d 59, 61 (Wyo.1993). We defer to the original agency fact finder. *See Union Pacific Railroad Company v. Wyoming State Board of Equalization*, 802 P.2d 856, 859 (Wyo.1990) (deferring to the county board of equalization's findings of fact). In Case No. 94–171, the State Board of Equalization was the original fact finder, while the Park County Board of Equalization was the fact finder in Case No. 94–172. With regard to an agency's conclusions of law, we rectify that agency's errors when the agency has not

invoked and correctly applied the proper rule of law. *Thunder Basin Coal Company v. Study,* 866 P.2d 1288, 1291 (Wyo.1994).

### Facts and Discussion

■ The Carbon County Assessor and the Park County Assessor both used a depreciation schedule from the 1993 OIL & GAS DRILLING RIGS & FIELD EQUIPMENT SCHEDULES, prepared by the Ad Valorem Division of the Department of Revenue, to value Amoco's equipment. Amoco disputes the general validity of the depreciation schedule and specifically takes issue with two aspects of the schedule: (1) the schedule did not allow for any depreciation on the equipment in the first year of its life, and (2) the schedule established a forty percent floor below which the value of oil and gas field equipment could not be depreciated. Before we begin our analysis of the cases at hand, we reiterate the standard of proof with respect to tax valuations: "[T]he burden of proof is upon the party asserting an improper valuation." *Teton Valley Ranch v. State Board of Equalization,* 735 P.2d 107, 113 (Wyo.1987).

Amoco contends that the county assessors should have used prices from the sales of comparable equipment instead of using the depreciation schedule to value its used oil and gas field equipment. Neither the tapes nor the transcripts of the hearing held before the Park County Board of Equalization were included in the record on appeal, and the parties did not attempt to settle the record pursuant to W.R.A.P. 3.03. It is, therefore, impossible for us to evaluate whether Amoco was successful in proving that the Park County Assessor's valuation method was improper. *See Jacobs v. Jacobs,* 895 P.2d 441 (Wyo.1995).

■ We do, however, have the tapes of the hearing held before the State Board of Equalization in the Carbon County case. At that hearing, Amoco presented evidence which showed the prices for which various pieces of used oil and gas field equipment

had been sold in order to establish what it considered to be the fair market value of its equipment. The values advanced by Amoco were, of course, lower than the assessed values calculated by the county assessor. The State Board of Equalization found that Amoco had not carried its burden of proving that the county assessor's determination of value was incorrect. We agree.

■ The State Board of Equalization's rules articulate acceptable ad valorem tax appraisal techniques. RULES AND REGULATIONS, WYOMING STATE BOARD OF EQUALIZATION ch. XXII, § 6 (1992) (amended 1993). Both the sales comparison approach, which was advocated by Amoco, and the cost approach, which was used by the county assessor, are delineated as being acceptable appraisal methods under the State Board of Equalization's rules. *Gray v. Wyoming State Board of Equalization,* 896 P.2d 1347, 1349 (Wyo.1995). The county assessor had to choose an appropriate method to use in valuing the specific property at issue. In examining the propriety of the valuation method, "our task is not to determine which of various appraisal methods is best or most accurately estimates [fair market value]; rather, it is to determine whether substantial evidence exists to support usage of the [chosen] method of appraisal." *Holly Sugar Corporation v. State Board of Equalization for State of Wyoming,* 839 P.2d 959, 963 (Wyo. 1992). *See also CF & I Steel Corporation v. State Board of Equalization,* 492 P.2d 529, 532 (Wyo.1972).

The record contained substantial evidence which supported the State Board of Equalization's conclusion that Amoco had not met its burden of proving that the appraisal method chosen by the county assessor was inappropriate. Amoco suggests that, under the statutory definition of fair market value,[1] the sales comparison method is superior to the cost method. This Court has not, however, construed the law in that way. We stated in *Union Pacific Railroad Company* that,

---

1. (vi) "Fair market value" means the amount in cash, or terms reasonably equivalent to cash, a well informed buyer is justified in paying for a property and a well informed seller is justified in accepting, assuming neither party

to the transaction is acting under undue compulsion, and assuming the property has been offered in the open market for a reasonable time.... WYO.STAT. § 39-1-101(a)(vi) (1994).

when the fair value is not represented by the sale price, "the assessor may disregard the sale price in favor of other proper criteria used to determine fair value." 802 P.2d at 862. *See also Holly Sugar Corporation,* 839 P.2d at 963.

■ The county assessor testified at the contested case hearing that he did not have enough comparable sales information available to him so that he could employ the sales comparison method. Amoco introduced evidence of what it considered to be comparable sales; however, those sales did not satisfy the requirements of Wyo.Stat. § 39–1–101(a)(vi) (1994) or Chapter XXII, Sections 4(a) (now Section 4(g)) and 6(a) of the State Board of Equalization's rules. *See Union Pacific Railroad Company,* 802 P.2d at 861. In contrast, the county assessor did introduce evidence which established that the cost approach was appropriate for valuing used oil and gas field equipment.

■ Amoco specifically disputes the forty percent floor on the depreciation allowed for used oil and gas field equipment. The forty percent floor was not applied to determine the assessed value of any of Amoco's equipment. We refuse to rule on whether or not the forty percent floor was proper because no justiciable controversy has been presented on that issue. *See State Department of Revenue and Taxation v. Pacificorp,* 872 P.2d 1163, 1168–69 (Wyo.1994).

■ Amoco also challenges the depreciation schedule because the schedule did not allow for depreciation in the first year of an asset's life. Amoco did not meet its burden of proving that the denial of first year depreciation was inappropriate. The evidence which was presented at the Carbon County hearing before the State Board of Equalization established that the schedule did not include an allowance for first year depreciation because the equipment is new at that point and should be assessed at its full value. Amoco did not present sufficient evidence to show that the failure to allow first year depreciation resulted in an improper valuation of its equipment.

■ Amoco argues that, by refusing to allow first year depreciation and by estab-lishing the forty percent floor for depreciation of its used equipment, the county assessor created an unconstitutional subclass of property because other property within the industrial property class was not valued under the same methodology. We disagree.

All taxable property must be valued annually at its fair market value. Wyo.Stat. §§ 39–2–101(a)(i) & 39–2–102 (1994). Article 15, Section 11 of the Wyoming Constitution designates three classes of property for taxation purposes:

(a) All property, except as in this constitution otherwise provided, shall be uniformly valued at its full value as defined by the legislature, in three (3) classes as follows:

(i) Gross production of minerals and mine products in lieu of taxes on the land where produced;

(ii) Property used for industrial purposes as defined by the legislature; and

(iii) All other property, real and personal.

(b) The legislature shall prescribe the percentage of value which shall be assessed within each designated class. All taxable property shall be valued at its full value as defined by the legislature....

(c) The legislature shall not create new classes or subclasses or authorize any property to be assessed at a rate other than the rates set for authorized classes.

(d) All taxation shall be equal and uniform within each class of property. The legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal.

The statutory definition of "property used for industrial purposes" includes properties which are used or held for use for the extraction or processing of minerals. Wyo.Stat. § 39–1–101(a)(xvi)(B) (1994). The parties agree that Amoco's used oil and gas field equipment should be classified as being property used for industrial purposes.

When they are implementing these statutory directives, the State Board of Equalization and the county assessor must value all property at its fair market value. *Gray,* 896

P.2d at 1348, 1351. The county assessor sought to ascertain the fair market value of used oil and gas field equipment by utilizing the depreciation schedule. Many types of property are included within each of the three constitutional classes of property. It would not be feasible for the county assessor to use the same valuation method for different types of property. *Gray*, 896 P.2d at 1351. For example, it has long been recognized that, even though mineral products are one class of property, different valuation methods should be applied to different types of minerals. Oil is not valued by using the same method as is used in valuing coal or uranium. *See, e.g., Pathfinder Mines Corporation v. State Board of Equalization*, 766 P.2d 531 (Wyo.1988) (recognizing that uranium is valued by using a different method than is used in valuing other mineral products).

Amoco argues that this Court disallowed the application of different methodologies to property within the same class in *Rocky Mountain Oil and Gas Association v. State Board of Equalization, Department of Revenue and Taxation*, 749 P.2d 221 (Wyo.1987). In that case, we held that a valuation system which used different assessment ratios for different types of property was unconstitutional. 749 P.2d at 239. In this case, the county assessor multiplied the fair market value of Amoco's equipment by eleven and one-half percent to determine the taxable value. Wyo.Stat. § 39–1–101(a)(xvii)(B) (1994). Amoco does not contend that the county assessor used different rates in determining the taxable values of other industrial properties. The county assessor, therefore, did not create an unconstitutional subclass of property. Amoco's constitutional rights to equal protection, equal and uniform taxation, and due process of law were not violated.

Amoco maintains that the State Board of Equalization erred by affirming the county assessor's determination because the county assessor based his decision on the 1993 Oil & Gas Drilling Rigs & Field Equipment Schedules which had never been officially promulgated by the State Board of Equalization under the rule-making provisions of the Wyoming Administrative Proce-

dure Act. We do not agree with Amoco's contention.

Amoco insists that Wyo.Stat. § 39–1–304(c) (1994) required that the schedule be promulgated under the Wyoming Administrative Procedure Act:

(c) The following shall be adopted in accordance with the requirements and procedures of the Wyoming Administrative Procedure Act:

(i) Adoption of any manual, formula, method or system to be used to determine the fair market value of property for tax purposes;

.  .  .  .  .

(iii) Adoption of standards, guidelines, criteria or methods to implement paragraph (a)(xiii) of this section.

In this case, the Ad Valorem Division of the Department of Revenue published the schedule, but the State Board of Equalization did not officially promulgate it as a rule. At first blush, the language of § 39–1–304(c) seems to require the State Board of Equalization to officially promulgate any schedule, manual, etc. which is used for valuation purposes; however, we rejected that interpretation in *Pathfinder Mines Corporation:*

This court has not previously required that a valuation system adaptation and pricing mechanisms within the Department require promulgation by the regularized rule processes of the [Wyoming Administrative Procedure Act], W.S. 16–3–102(b), as long as statutory and constitutional rights to protest and contest are afforded to the taxpayer.

... The adaptation criteria of W.S. 39–1–304(c) relates to action of the Board and not the Department.... [B]asic decision letters as issued by the Department do not constitute rules and need not be adopted pursuant to the [Wyoming Administrative Procedure Act].

766 P.2d at 535–36 (citations omitted). *See also AT & T Communications of the Mountain States, Inc. v. State Board of Equalization*, 768 P.2d 580, 585 (Wyo.1989). Amoco has been afforded the opportunity in this case to contest the valuation methodology.

*Conclusion*

The State Board of Equalization did not commit any reversible error. Its orders are, therefore,

Affirmed.