## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 16, 2006

Mr. James R. Huffines
Chair, Board of Regents
The University of Texas System
201 West Seventh Street
Austin, Texas 78701-2902

Mr. John D. White
Chair, Board of Regents
The Texas A&M University System
Post Office Box C-1
College Station, Texas 77844-9021

Opinion No. GA-0438

Re: Whether The University of Texas System and The
Texas A&M University System may promulgate rules
setting a dollar amount under which the university
systems may procure printing services without a
competitive bidding process (RQ-0428-GA)

Dear Mr. Huffines and Mr. White:

The Texas A&M University System and The University of Texas System (collectively, the
"university systems") ask whether the university systems may promulgate rules setting a dollar
amount under which they may procure printing services without a competitive bidding process.[1]

The university systems initially focus their inquiry on article XVI, section 21 of the Texas
Constitution, which provides that "[a]ll . . . printing . . . shall be performed under contract, to be
given to the lowest responsible bidder, below such maximum price and under such regulations as
shall be prescribed by law." TEX. CONST. art. XVI, § 21. The request letter indicates that the
university systems currently construe article XVI, section 21 to require all printing that is not
performed in-house to require competitive bidding. *See* Request Letter, *supra* note 1, at 1–2. But
this "strict interpretation" has, you report, "led to questionable results":

> One of our employees was traveling in order to make a seminar
> presentation and needed extra copies of the material to be distributed
> to participants. He had the hotel run the necessary copies and was
> charged less than $10.00. His request for reimbursement was

---

[1]*See* Letter from Barry D. Burgdorf, Vice Chancellor and General Counsel, The University of Texas System,
and Scott A. Kelly, Deputy General Counsel, The Texas A&M University System, to Honorable Greg Abbott, Attorney
General of Texas (Dec. 20, 2005) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us)
[hereinafter Request Letter].

questioned because he had not secured three competitive bids before asking the hotel to make the copies.

*Id.* at 2.

## I.    Whether the university systems may rely on Government Code chapter 2155 and TBPC rules

You note that, in reliance on the constitutional phrase "under such regulations as shall be prescribed by law" and in accordance with its statutory authority, the Texas Building and Procurement Commission ("TBPC") recently adopted a rule allowing state agencies generally to purchase print jobs without competitive bidding if the estimated purchase price does not exceed $5,000.[2] *See id.* at 2–3; *see also* TEX. BLDG. & PROCUREMENT COMM'N, THE STATE OF TEXAS PROCUREMENT MANUAL § 2.21.3, "Printing and Copying Services," *available at* http://www.tbpc .state.tx.us/stpurch/procmanual.pdf (last visited June 14, 2006). TBPC's rule is consistent with Government Code section 2155.132(e), which authorizes a state agency to purchase goods or services without competitive bidding "if the purchase does not exceed $2,000, or a greater amount prescribed by [TBPC] rule." *See* TEX. GOV'T CODE ANN. § 2155.132(e) (Vernon 2000).

Your letter suggests that the university systems are not subject to TBPC's purchasing rule or, apparently, section 2155.132(e) of the Government Code, but are governed instead by sections 51.9335, 73.115, and 74.008 of the Education Code. *See* Request Letter, *supra* note 1, at 3 ("Purchases by institutions of higher education . . . are not regulated by TBPC but instead are governed by" the Education Code.); *see also* TEX. EDUC. CODE ANN. § 51.9335 (Vernon Supp. 2005), *id.* §§ 73.115, 74.008 (Vernon 2002). We question this assumption. Section 51.9335(d) of the Education Code expressly permits, but does not require, an institution of higher education to "acquire goods or services as provided by Chapter[] 2155, . . . Government Code." TEX. EDUC. CODE ANN. § 51.9335(d) (Vernon Supp. 2005). We accordingly believe that the university systems may elect to purchase printing services in compliance with chapter 2155 and TBPC's corresponding rules.

## II.   Whether the university systems have statutory authority to adopt the proposed rule

It is possible, however, that the university systems do not wish to comply with TBPC rules but wish to adopt their own alternative rules. We thus understand you to ask whether the Education Code authorizes the university systems to adopt their own rules, alternative to those TBPC has adopted consistently with Government Code chapter 2155.

Education Code section 51.9335 sets out rules for the acquisition of goods and services by an institution of higher education generally. For purposes of section 51.9335, "institution of higher

---

[2]TBPC's rules define the term "printing" in the context of state purchasing as "a means of word processing or graphic reproduction of paper documents using a printing process." TEX. BLDG. & PROCUREMENT COMM'N, THE STATE OF TEXAS PROCUREMENT MANUAL § 2.21.3, "Printing and Copying Services," *available at* http://www.tbpc.state.tx.us/ stpurch/procmanual.pdf (last visited June 14, 2006).

education" means a "public technical institute, public junior college, public senior college or university, medical or dental unit, public state college, or other agency of higher education . . . ." *Id.* § 61.003(8); *see also id.* § 51.9335(e) (defining the term "institution of higher education" to have the "meaning assigned by section 61.003"). Education Code sections 73.115 and 74.008 provide similarly for the University of Texas at Houston and the University of Texas Medical Branch at Galveston. *See* Request Letter, *supra* note 1, at 3; *see also* TEX. EDUC. CODE ANN. §§ 73.115, 74.008 (Vernon 2002). Because section 51.9335 pertains to the university systems generally, and sections 73.115 and 74.008 do not add anything to the university systems' authority, we discuss only section 51.9335 here.

Before we consider whether the university systems may adopt a rule similar to TBPC's to except certain purchases from article XVI, section 21's competitive procurement requirement, we will consider whether the university systems have statutory authority to adopt the rule. *See TXU Generation Co. v. Pub. Util. Comm'n,* 165 S.W.3d 821, 829 (Tex. App.—Austin 2005, pet. filed) (indicating that an agency rule's validity may be challenged on constitutional and statutory grounds). In general, The University of Texas System Board of Regents has authority to "govern, operate, support, and maintain" the component institutions that comprise the system. TEX. EDUC. CODE ANN. § 65.31(a) (Vernon 2002); *see also id.* § 65.11 (stating that the university system's "government" is vested in a board of regents). The University of Texas System's board has express authority to "promulgate . . . such . . . rules and regulations for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable." *Id.* § 65.31(c). The Texas A&M University System has similar express rule-making authority: "The board shall make . . . rules[] and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services." *Id.* § 85.21(a). This office previously has concluded that state universities have "broad authority to provide services and perform functions" even if the services and functions are not expressly authorized by statute. Tex. Att'y Gen. Op. No. DM-329 (1995) at 7. Moreover, rules adopted by a university system's board of regents in the exercise of the board's delegated authority have the force and effect of law. *See Foley v. Benedict,* 55 S.W.2d 805, 808 (Tex. 1932) (stating that rules of The University of Texas System's Board of Regents "are of the same force as would be a like" legislative enactment); *accord Fazekas v. Univ. of Houston,* 565 S.W.2d 299, 304 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.) (stating that, given that the University of Houston's board has statutory authority to enact rules as necessary to govern the university, "its rules are of the same force as would be a like" legislative enactment).

University system rules may not be contrary to the constitution or statutes, however. *See R.R. Comm'n v. Lone Star Gas Co.,* 844 S.W.2d 679, 685 (Tex. 1992) (stating that a state agency's rules must be consistent with state law). Rules must therefore be consistent with applicable statutes, including section 51.9335 of the Education Code. *See Gulf States Utils. Co. v. Pub. Util. Comm'n,* 784 S.W.2d 519, 527 n.5 (Tex. App.—Austin 1990), *aff'd,* 809 S.W.2d 201 (Tex. 1991) (stating that an agency may not adopt a rule out of harmony with a statute).

Under section 51.9335(a), "[a]n institution of higher education may acquire goods or services by the method that provides" the best value, including:

    (1)    competitive bidding;

    (2)    competitive sealed proposals;

    (3)    a catalogue purchase;

    (4)    a group purchasing program; or

    (5)    an open market contract.

TEX. EDUC. CODE ANN. § 51.9335(a) (Vernon Supp. 2005). In identifying the best value, an institution of higher education must consider:

    (1)    the purchase price;

    (2)    the reputation of the vendor and of the vendor's goods or services;

    (3)    the quality of the vendor's goods or services;

    (4)    the extent to which the goods or services meet the institution's needs;

    (5)    the vendor's past relationship with the institution;

    (6)    the impact on the ability of the institution to comply with laws and rules relating to historically underutilized businesses and to the procurement of goods and services from persons with disabilities;

    (7)    the total long-term cost to the institution of acquiring the vendor's goods or services;

    (8)    any other relevant factor that a private business entity would consider in selecting a vendor; and

    (9)    the use of material in construction or repair to real property that is not proprietary to a single vendor unless the institution provides written justification in the request for bids for use of the unique material specified.

*Id.* § 51.9335(b).

The type of purchasing arrangement you ask about appears to be an open market contract, which would be a permissible purchasing method under section 51.9335(a)(5). *See id.* §

51.9335(a)(5). No statute or Texas case law defines the phrase "open market contract." Case law from other jurisdictions indicates that an open market contract is a contract "open to all who wish to purchase at the vendor's prices, as contrasted, for example, with" a competitive bidding situation. *Albany Supply & Equip. Co. v. City of Cohoes*, 262 N.Y.S.2d 603, 605 (N.Y. Sup. Ct. 1965); *accord Guild Wineries & Distilleries v. Fresno County*, 124 Cal. Rptr. 96, 98 (Cal. Ct. App. 1975) (defining the phrase "open market transaction" as "one where the sale price is negotiated between the buyer and seller"); *Harvey v. City & County of Denver*, 18 P.2d 321, 322 (Colo. 1932) (stating that a purchase on the open market "conveys the idea of buying, at the dealer's price, what he offers, as distinguished from the idea of presenting to him a schedule of what you desire . . . and asking him at what price he can meet your requirements"). TBPC has defined the analogous phrase "open market purchase" in its regulations as "[a] purchase of goods, usually of a specified quantity, made by buying from any available source in response to an open market requisition." 1 TEX. ADMIN. CODE § 113.2(37) (2006) (Texas Building and Procurement Commission, Definitions); *cf.* BLACK'S LAW DICTIONARY 983 (7th ed. 1999) (defining "open market" as "[a] market in which any buyer or seller may trade and in which prices and product availability are determined by free competition"). We accordingly construe the phrase "open market contract" in section 51.9335(a)(5) to mean a contract that is not subjected to a competitive procurement process but that an institution of higher education enters by agreeing to the same terms the vendor establishes for purchasers generally.

Section 51.9335 expressly permits an institution of higher education to acquire goods or services by means of an open market contract if such a contract is the "method that provides the best value to the institution." TEX. EDUC. CODE ANN. § 51.9335(a)(5) (Vernon Supp. 2005). Because the university systems thus have express authority to purchase services generally by means of an open market contract, we conclude that, consistently with section 51.9335, a university system may adopt a rule that sets a dollar amount under which the system may procure printing services using an open market purchase instead of a competitive procurement procedure. *See* Request Letter, *supra* note 1, at 3.

## III.    Whether the university systems' proposed rule contravenes Texas Constitution article XVI, section 21

We consider next whether such a rule would be consistent with article XVI, section 21 of the Texas Constitution. Article XVI, section 21 requires that all printing "be performed under contract, . . . given to the lowest responsible bidder, . . . *under such regulations as shall be prescribed by law.*" TEX. CONST. art. XVI, § 21 (emphasis added). Words within a constitution are given their natural meaning. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) ("[p]resuming that the language of the Texas Constitution is carefully selected, we construe its words as they are generally understood"); *Markowsky v. Newman*, 136 S.W.2d 808, 813 (Tex. 1940) (stating that a court must interpret constitutional words "as the people generally understood them"); *see also* Tex. Att'y Gen. Op. No. H-984 (1977) at 1 (construing the term "stationery" as used in article XVI, section 21).

Although the phrase "under such regulations as shall be prescribed by law" has not been construed in the context of article XVI, section 21, analogous language has been construed in other

constitutional contexts. Article V, section 5, for example, declares jurisdiction of the Texas Court of Criminal Appeals as "coextensive with the limits of the state . . . in all criminal cases . . . under such regulations . . . as prescribed by law." TEX. CONST. art. V, § 5(a). In 1924 the Court of Criminal Appeals construed article V, section 5 to enable the legislature to restrict the court's jurisdiction to "persons convicted of offenses and those denied release under the writ of habeas corpus." *DeSilva v. State*, 267 S.W. 271, 272 (Tex. Crim. App. 1924). In 1935 the Court of Criminal Appeals construed former article V, section 16, which provided county courts with appellate jurisdiction in criminal cases of which the justice courts have original jurisdiction "under such regulations as may be prescribed by law." *Kubish v. State*, 84 S.W.2d 480, 481 (Tex. Crim. App. 1935). The court noted that this language authorized the legislature to "entirely divest the county court of criminal jurisdiction" if it "saw fit" to do so. *Id.* And in 1965 the Fort Worth court of civil appeals construed former article V, section 8, which provided a district court with "'original jurisdiction and general control over . . . minors under such regulations as may be prescribed by [the legislature].'" *Hendricks v. Curry*, 389 S.W.2d 181, 186 (Tex. Civ. App.—Fort Worth 1965) (quoting former article V, section 8), *rev'd on other grounds*, 401 S.W.2d 796 (Tex. 1966). As the court said, "the qualifying phrase 'under such regulations as may be prescribed by law' . . . constituted a notice of the conferring of authority upon the Legislature to regulate and place limitations upon the rather broad authority conferred upon the court." *Id.* at 187.

Given this judicial guidance, we conclude that article XVI, section 21 permits a body to adopt rules that limit a constitutional provision regarding the competitive purchasing of printing services. It appears that the legislature has reached the same conclusion, having adopted a general statute authorizing a state agency to make a purchase that does not exceed "$2,000, or a greater amount prescribed by [TBPC] rule" without competitive bidding. TEX. GOV'T CODE ANN. § 2155.132(e) (Vernon 2000). Because rules of the university systems' boards of regents have the force of law, *see Foley*, 55 S.W.2d at 808 (stating that rules of The University of Texas System's Board of Regents "are of the same force as would be a like" legislative enactment), we believe the university systems may, consistently with article XVI, section 21 of the Texas Constitution, adopt rules that exclude certain purchases of printing services from the competitive procurement requirement.

## S U M M A R Y

The University of Texas System and The Texas A&M University System may "acquire goods or services as provided by" Government Code chapter 2155 and rules of the Texas Building and Procurement Commission adopted thereunder. TEX. EDUC. CODE ANN. § 51.9335(d) (Vernon Supp. 2005). In the alternative, the university systems may adopt a rule that sets a dollar amount under which the system may procure printing services using an open market purchase instead of a competitive procurement procedure. *See id.* §§ 51.9335(a)(5) (Vernon Supp. 2005), 65.31(c), 85.21(a) (Vernon 2002).

The phrase "under such regulations as shall be prescribed by law" in article XVI, section 21 of the Texas Constitution, which provides that all "printing . . . shall be performed under contract, to be given to the lowest responsible bidder . . . under such regulations as shall be prescribed by law," authorizes the legislature or a state agency, such as a university system, with appropriate rule-making authority to adopt a rule that establishes a dollar amount under which a university system may procure printing services without a competitive bidding process. TEX. CONST. art. XVI, § 21.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee